## FEARS, sheriff, *et al. v.* THE STATE.

1. A right of property in spirituous and malt liquors exists under the law in all the counties of this State; and this property is subject to a judgment against the owner, in like manner and to the same extent as other property.

2. The act approved September 18, 1885, to provide for preventing the evils of intemperance, etc., does not by its terms, or by necessary implication, apply to sales of such property under judicial process in a county where the terms of such act have become applicable by virtue of an election held as prescribed in the act.

3. A sale in a proper manner and with a bona fide purpose on the part of the officer to obey the mandate and accomplish the legitimate design of process in his hands, is not repugnant to the provisions of the act above referred to, nor to the provisions of our statute law which prohibits the sale of such liquors without license. Being authorized by the general law of the State, such a sale is not of itself such a public nuisance in any county as may be enjoined by a court of equity.

4. If two persons, colluding with each other to evade a statute prohibiting the sale of such liquors in a particular locality, in pursuance of such collusion enter into an arrangement by which one, just before the expiration of the license under which he could sell, adds to his stock large quantities of intoxicating liquors, executes to the other a mortgage on such stock, and suffers a foreclosure thereof and the issuance of an execution thereunder, which the mortgagee causes to be levied upon such liquors, and is proceeding under the guise of a process to sell and continue the sale of such liquors in small quantities and at retail from day to day, such sale would be an abuse of the process, and should be enjoined; or if an officer in whose hands such a process has been placed is proceeding under color thereof, and in furtherance of such collusion, whether innocently or otherwise, to conduct what is really a private sale of such liquors, even though conforming to the usual forms of an execution or judicial sale, thus indirectly prostituting what would otherwise be legal process, to the accomplishment of an illegal end, the sale would be illegal; and a court of equity, while giving full effect to the right of the creditor to subject the property of the debtor to payment of the judgment, will not permit a sale to be so made.

5. The court has always the power in judicial sales to regulate the manner of such sales; and in execution sales, also the power, for fraud, mistake or irregularity, to control and even set them aside in its legal discretion.

(a) The decision in this case having been rendered on an erroneous view of the law, and, as stated by the judge, without the exercise of discretion as to the circumstances attending the proposed sale, the judgment, for the cause stated, is reversed.

Argued June 29, — Decided August 10, 1897.

Injunction. Before Judge Hart. Morgan county. June 1, 1897.

On May 18, 1897, H. G. Lewis, solicitor-general, brought his information and petition in behalf of the State against the sheriff and deputy-sheriff of Morgan county, and Chambers and Cochran, for injunction. The court granted an injunction, and defendants excepted.

The petition alleged: On August 6, 1896, an election was held in said county under the general local option laws of the State, and resulted in a majority "against the sale" of all intoxicating liquors in the county, which result was declared by an order passed by the ordinary on August 8, 1896, and duly published for four consecutive weeks following the order; and by virtue of said election, order and publication, it became, from and after that time, unlawful to sell any intoxicating, spirituous, vinous or malt liquors within the limits of the county. At the time of the election Chambers and Cochran were in the business of retailing spirituous liquors in the city of Madison in said county. Chambers continued in business until January 1, 1897, and Cochran until April 29, 1897, at which dates the license of each expired. On or about January 1, 1897, Chambers removed to the storehouse of Cochran a large quantity of intoxicating liquors, which Chambers had left on hand at the expiration of his license, and for some time thereafter he was engaged in business in the barroom of Cochran. On April 13, 1897, Cochran executed to Chambers a mortgage which embraced, among other things, brandies, whiskies, wines and beers then stored in the barroom of Cochran. On May 3, 1897, Chambers foreclosed his mortgage; and the fi. fa. issued thereon was on that day levied upon said liquors by the deputy-

sheriff, who has advertised a sale of the same to commence on May 20, 1897, and to continue from day to day until all or a sufficiency of the property shall have been sold to satisfy the fi. fa. When Chambers received the mortgage and the notes described therein, and before Cochran had contracted to pay him the amounts named in the mortgage, they both knew that it had become unlawful for any one to sell liquors in the county, and also knew when the license of Cochran for such sale would expire. Cochran, shortly before the expiration of his license, had consigned to him large quantities of intoxicating liquors at a time when he must have known that in the ordinary course of trade he could not have disposed of them; and he thus added to his stock for the purpose of creating a larger stock of liquors to be sold at sheriff's sale upon the foreclosure of the mortgage. Since the levy of the mortgage fi. fa., Chambers and Cochran have had full access to the barroom where the liquors are stored, and have been engaged in drawing off liquors contained in barrels, etc., in the barroom, and putting the same in small bottles, varying from a half-pint to a quart, for the purpose of bringing about at the sheriff's sale a retail of the liquors, and for the purpose of continuing the sale for days, and perhaps even weeks, until the stock is thus disposed of by retail. It is being advertised and currently reported throughout the county that the chief days of the sale will be Wednesdays and Saturdays. Unless the sale be enjoined by the court, it will continue from day to day and week to week, and will thus bring together a large number of intemperate people upon the streets in the city, who will buy the liquor in small quantities at public outcry, and many of them will drink the same, and doubtless become intoxicated upon the public highways, and thus disturb the peace, quiet and good order of society. The primary purpose of giving the mortgage was to continue the sale of said liquors after the local option law had gone into effect in the county, and under the guise of a sheriff's sale to evade the penalties of the law. Petitioner charges upon information that Chambers and Cochran were really partners in the sale of liquors prior to the expiration of the license of Cochran, and that in the execution

of the mortgage they colluded together to increase the stock of liquors just previous to the expiration of Cochran's license, and to sell the same after its expiration. The sale of the liquors by the sheriff or his deputy is unlawful and directly in violation of the local option laws of the State; and besides there is no authority of law for commencing the sale on the 20th instant and continuing it from day to day. Even if the debt of said parties is a bona fide debt, yet they knew at the time it was created that it could not be enforced by a sale of liquors in the county, especially after the date of the expiration of Cochran's license. The sale, if allowed to proceed, will amount to a public nuisance, and will disturb the peace and quiet of the community at large. Chambers and Cochran were and are partners in the business of distilling spirituous liquors in the county; and shortly before the foreclosure of the mortgage, large quantities of liquors from their distillery were stored in Cochran's barroom for the purpose of bringing about a sale of the same under the foreclosure of the mortgage, and these liquors are embraced in the sheriff's levy. Cochran is solvent, and there is no necessity for the sale of the liquors to pay his alleged indebtedness in the mortgage. Petitioner and the public at large will be remediless against the perpetration of said public nuisance, unless the defendants are restrained by an injunction.

Defendants demurred, and made answers in which the allegations as to collusion on their part to evade the law were denied; and it was contended that the law referred to did not concern a sheriff's sale under valid legal process.

At the hearing there was evidence that, for several days immediately preceding the expiration of Cochran's license, and until the day of closing his barroom, unusual quantities of whisky and other liquors were received by him there, a considerable portion being from the distillery of Chambers & Cochran, and the rest coming from a distance; that after the levy, liquors were being drawn from barrels and bottled in the barroom, and Chambers and Cochran were seen there together on several occasions when no one else was present. There was also evidence contradicting this. After the levy, a third per-

son made an offer to Chambers to pay off in full his claim against Cochran. Chambers promised to see his attorney about it, but nothing further was heard from him. At the hearing, counsel for the plaintiff made in open court a tender to Chambers of the full amount of the mortgage fi. fa., upon condition that the fi. fa. be transferred to a certain person named. This tender was refused. It was admitted by the plaintiff that the mortgage was for a bona fide indebtedness and had been properly foreclosed.

The judge, in granting the injunction, placed his ruling upon the ground that, irrespective of the question of good faith on the part of the mortgagor or mortgagee, the sale sought to be enjoined would be in violation of the law prohibiting the sale of liquors in the county, and a public nuisance.

*Foster & Butler*, for plaintiffs in error.

*H. G. Lewis*, solicitor-general, *H. T. Lewis*, and *E. H. George*, contra.

LITTLE, J. In the case at bar, the judge, in granting the injunction, placed his ruling on the ground that a sale of spirituous liquors under judicial process in a county in which, by the provisions of the local option liquor law, such sales are prohibited, is a public nuisance and ought to be enjoined.

1. The act of the General Assembly, approved September 18, 1885 (Acts 1884–5, p. 121), known as the general local option liquor law, recites in its caption that it is an act to provide for preventing the evils of intemperance, etc. It further recites, that in counties where the act may become of force, it shall not be lawful for any person within the limits of such county to sell or barter for valuable consideration, either directly or indirectly, or give away to induce trade at any place of business, or furnish at other public places, any alcoholic, spirituous, malt or intoxicating liquors, or intoxicating bitters, or other drinks which if drunk to excess will produce intoxication, under penalties prescribed. The object of this act was, as its caption recites, to prevent the evils of intemperance, and the means of preventing such evils was to prohibit the selling or giving away of the liquors enumerated. Further than this the act does not go. It is a valid

and constitutional act of the General Assembly, and is entitled to have full force and effect; and in construing such acts, the spirit as well as the letter of the law will be regarded, to accomplish the object sought. It will be noted, however, that the inhibition under this act extends only to the sale, barter, furnishing or giving away of spirituous liquors. There is no attempt under the act to destroy the right of property in liquors, nor is there anything deducible from any of its provisions which declares the ownership of such liquors illegal. The mandate of the law is, that they shall not be sold; they shall not be given away; they shall not be bartered; they shall not be furnished. Under the provisions of the act, they may be held, kept, owned and used in counties where its provisions apply. If they can be so kept and owned, then they are property. Property in its appropriate sense means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects, and generally to the exclusion of all others. Standing alone, the term includes everything that is the subject of ownership. Under our code, the term "property" includes things both real and personal. Code of 1882, § 5. There being nothing in the act of 1885 which destroys the right of property in spirituous liquors, it must and does exist just as it did prior to the passage of that act, as is shown by the authorities bearing on the proposition. Property in an article is the right to have and use it subject to law; and a writer on spirituous liquors, supported by authority, lays down the doctrine that the right to sell it is not an essential ingredient that may not be separated from ownership. Black on Intoxicating Liquors, § 38. It has been held in several States that a law regulating or prohibiting the sale of any article deemed injurious to the public, as intoxicating liquor, does not take away any vested right of property. 25 Conn. 290; 29 Conn. 479; 5 R. I. 185; 27 Vt. 328; 54 Am. Dec. 639. In all of the States, so far as we know, police control over the sale of intoxicating liquors is exercised because of the evils attending their misuse or excessive use; and while this is true, it does not follow that they are incapable of being lawfully held in possession, or that they

are not subjects over which ownership can be exercised. On the contrary, such liquors, when not held under circumstances which constitute a nuisance or a penal offense, are entitled to protection as other property. Brown v. Perkins, 12 Gray, 89. It has been held in Massachusetts (9 Gray, 139), and in Iowa (20 Iowa, 305), that it is not a good defense to an indictment for stealing liquor, that the same was bought, kept, owned or intended for sale in violation of law. So that there can be no question of the proposition that, notwithstanding our local option liquor law, a right of property in spirituous and malt liquors exists, even in counties where the provisions of that law are in force. Being property, there must be some provision of law which exempts them from the liens of judgments which attach against them, or some other provision of law which would render them incapable of being pledged for a debt; in both of which instances the processes of the court would be required to render the judgment or mortgage available. It is said by Mr. Black, in his work on Intoxicating Liquors, § 246, in speaking of the effect of liquor (prohibitory) laws on contracts, that the validity of a chattel mortgage upon intoxicating liquors presents a question of serious difficulty and one which has not been uniformly decided by the courts. A consideration of the reasons given by him, however, for this proposition, clearly shows that this difficulty exists at common law, under which a mortgage is a conditional sale of the mortgaged property, and operates to transfer the legal title to the mortgagee, subject to be defeated by performance of the conditions of the instrument on the part of the mortgagor. Being a conditional sale, the question arose whether such sale did not come under the provisions of the prohibition laws. It was argued that the sale was inter partes, and depending on their act, the same was governed by the restrictions of the prohibitory legislation. In Georgia, however, a mortgage is not a conditional sale and does not operate to transfer the legal title to the mortgagee. It is a simple lien upon the property, and hence would not be subject to the same difficulty, inasmuch as in the creation of a mortgage there are none of the elements of a sale. Our statute (Civil Code, § 2723) expressly

provides that a mortgage may embrace all property in possession, etc.   We have heretofore seen that liquors are property under the common law; that this right of property is not destroyed by legislation which prohibits a sale of such liquors; and being property, they are subject to the payment of the debts of the owner.   It must follow that a valid lien may be created thereon, and that the lien of a judgment rendered against the owner attaches in the same manner as it would attach to other property.   The binding force of judgments rendered attaches to *all* the property of the defendant, both real and personal, from the date of such judgment, subject only to such exceptions as are made in our code.   Civil Code, § 5351.

2.  If property exists in spirituous and malt liquors and the same by the act of the parties can be made security for a debt, or if, as other property, it is subject to a judgment rendered against the owner, it would follow that such property could be taken and sold under the process of a court.   If this were not true, it must be because the statute prohibits such sales eo nomine, or that the provisions of the prohibitory law affect the right of property to such an extent.   The regulation, prohibition or restriction of the manufacture of intoxicating liquors within the limits of the State is an exercise of the undisputed police power thereof; and in the case of Mugler *v.* Kansas, 123 U. S. 623, the exercise of such power has been held, because of its character as a police regulation, not to contravene the provisions of the Federal constitution, which declares that no State shall deprive any person of life, liberty or property, without due process of law.   The act of the General Assembly of 1885, referred to above, is but an exercise of the police power belonging to this State; and while it would be the undoubted right of the authority passing the act to extend the provisions of such act over the entire State, it has not seen fit to do so. The scope of that act is, that such counties within this State as may choose to adopt its provisions may have them applied to such local divisions.   The act undertakes to guard the public morals, the public health and the public safety, in certain local divisions, by prohibiting the sale of liquors.   We all understand that it is the undoubted intendment of the act, to

prevent intemperance by prohibiting sales of liquor, and
thereby to abridge the use of the same to the greatest possible
extent. But neither the principles which underlie the enact-
ment of prohibition as embodied in the act, nor any restriction
found in it, necessarily or fairly imply that it meant to prevent
the application of such property to the payment of the debts
of the owner, nor to withhold it from the operation of judicial
process. I am aware that the contrary of this proposition has
been held by the Supreme Court of the State of Maine (Nichols
*v.* Valentine, 36 Maine, 322); but an examination of the au-
thority there will show that the ruling was largely made on
the construction of the statute of that State. However this
may be, we have a general law in this State which subjects all
the property of debtors to the payment of their debts (subject
to certain exceptions not necessary here to note), and general
laws for the seizure and sale of such property. When we look
to the object sought to be accomplished by the act of 1885,
and construe its restrictions fairly and liberally, we can not
arrive at the conclusion that the sales prohibited were intended
to apply to ministerial officers in the exercise of the duty im-
posed upon them by the mandates of the court. There exist
in this, as in most of the other States of the Union, regulations
which prescribe that licenses to sell spirituous liquors may be
granted on certain terms and conditions. The laws in force
impose substantially the same penalties for sales without
license as are imposed by the act under consideration for mak-
ing sales prohibited. It has been repeatedly held by the courts
of different States, that the requirement of a license in order
to authorize such sales did not extend to officers making sales
under the processes of the court. 77 Mich. 483; 33 N. H.
441; Black on Intoxicating Liquors, § 139. In the applica-
tion of the principle involved, the courts have gone further
and held that by an assignment in insolvency the debtor's
liquor passes like other property; that while an administrator
would not be authorized to carry on the business of his dece-
dent under the latter's license, yet if in the process of his duty
he was reducing the assets of the estate to cash and sold the
stock of liquor at a public sale or otherwise in large quantities,

either for money or in composition of the debts of the estate, such a sale would not be one contemplated by the license law. 17 Wis. 463.   By the license act the prohibition is general and absolute, that no one shall make sales of intoxicating liquors without first obtaining a license.   By the local option act no person is allowed, within a given territory, to make a sale of intoxicating liquors.   The penalties in each case are the same.   If the provisions of the former do not apply to officers of the court in making judicial sales of such property, by a parity of reasoning the provisions of the latter act do not apply in such cases.

3. From what has been said above, it must follow as our conclusion, that a lawful sale of liquors seized under execution can be made by an officer in executing the process of the court, and that such sale is not repugnant to the provisions of the act of 1885, and that a sale so made is not of itself a public nuisance, nor will it be enjoined on that ground in any county of this State.

4. It must, however, be understood that the ruling in this case is made on the assumption that the process was rightfully issued, properly levied, and that the officer of the court is proceeding singly and solely for the purpose of subjecting the property to sale for the benefit of the plaintiff in execution, as is his duty.   The bill in this case charges collusion between the plaintiff and the defendant in execution, and that the officer is proceeding, under the guise of the process, to sell and continue the sale of such liquors in small quantities and at retail from day to day.   If such in fact be the case, then such a sale would be illegal, would be a public nuisance, and would be violative of the spirit of the act of 1885; for while the officer might have in his hands a process which authorized the sale, and while in extreme cases the law authorizes, perhaps, sales of property seized under execution to be made in small quantities and in such manner as will best subserve the interests of the parties, yet, if the object of the officer is to evade existing law rather than to execute it, and to furnish, under the guise of a judicial sale, an opportunity to persons to purchase liquors in small quantities, it would not be a bona fide execution of the process in his hands; and if made in a county where the

license law prevails, he would be subject to the provisions of that law; and if made in a county where sales of liquor are prohibited, a sale so conducted would be illegal, and the persons concerned subject to the penalties of the statute. In other words, if the intent and object of the officer having the process, which intent and object may be shown by his acts, is to bring to sale this property in liquors just as he would any other property to raise the amount due on the execution, the sale is valid and legal. If, however, he is seeking to prostitute the process in his hands for the purpose of evading a law which is of equal validity with that under which he is avowedly proceeding, the officer would be acting in an illegal manner, not in conformity with law, and should be enjoined by the court.

5. A judicial sale of property, as contradistinguished from an ordinary sale under execution or a sheriff's sale, is always subject as to the mode and manner of such sale to direction by the court; and in sales of property made under execution issuing from the courts, our code gives to the court full power over its officers making such sale. Civil Code, § 5427. The same authority further authorizes the court to set aside such sale whenever it is infected with fraud, irregularity or error. See also *Parker* v. *Glenn,* 72 *Ga.* 638. Under this power, the officer proceeding to make the sale is subject to the control of the court, and any contemplated fraud, irregularity or error on his part may, upon proper proceeding instituted for that purpose, be prevented.

In this case the presiding judge granted the injunction prayed for, on the sole ground that a judicial sale of spirituous liquors in a county where the local option law is in force is a public nuisance and contravenes the terms of that act. In this we think he erred, for the reasons above set out, and have reversed his judgment. If in the exercise of the discretion vested in him by law he should find from the evidence submitted that the facts alleged by the petitioner are true, under the rulings made above, he has full power to prevent an irregular or illegal sale, either by the grant of an injunction, or other direction which may be proper.

*Judgment reversed. All the Justices concurring.*