## STRIBBLING et al. v. GEORGIA RAILWAY & POWER COMPANY.

1. Where an injunction is denied and the decision is brought to the Supreme Court, by writ of error, but no supersedeas is granted, a motion to dismiss such writ of error, on the ground that before the hearing in this court the act or acts against which it was sought to enjoin have been completed, will be denied when the evidence offered by the defendant in error in support of the motion to dismiss is controverted by the opposite party as to facts material to the ground of the motion.

2. Where provision is made by sections 5240 and 5241 of the Civil Code for the exercise of the right of eminent domain in connection with the generation and transmission of electricity for supplying light, heat, and power to the public, and section 5242 declares that "the power given under the two preceding sections shall not be used to interfere with any mill or factory actually in operation," the prohibition contained in the last section applies to mills and factories operated by steam-power, as well as to those operated by water-power.

3. The presiding judge, in refusing to grant the injunction prayed, having stated in his order that he had concluded that he had "no discretion in the premises," and having based his ruling on an erroneous view of the law which he apparently thought concluded him, and not upon a full consideration of the application for injunction on the issues of law and fact, his judgment is reversed, with direction to rehear the application and pass upon it on its merits.

APRIL 16, 1913.

Petition for injunction. Before Judge Jones. Habersham superior court. August 3, 1912. `

Stribbling and others filed a petition against the Georgia Railway and Power Company, alleging in substance as follows: As tenants in common they are the owners of four acres of land (described) in Habersham county, upon which they have located a manufacturing plant consisting of a grist-mill, planing-mill, sawmill, and crate factory, together with lumber-yards and buildings necessary for the carrying on of their business. The mills and factory are in actual operation, grinding grits for the public, and sawing lumber and manufacturing crates for shipment and sale, and are permanent in character. The plaintiffs invested about $4,000 in the land, buildings, machinery and equipment, and have established a rapidly growing milling and manufacturing business. The four acres are necessary for the operation of the milling and manufacturing enterprise, and are used and will be used in the operation thereof. The land is peculiarly adapted to the location of such an enterprise, having a stream of running water of suffi-

cient flow to furnish water for the generation of steam, and for other purposes necessary and desirable in operation. The defendant, a corporation chartered for the purpose of generating electricity by water, for supplying lights, heat, and power to the public, is engaged in erecting a line of towers between its works on the Tallulah river and the city of Atlanta and other points, preparatory to stringing wires for the transmission of electricity. It has purchased from Mrs. Harriet M. Stribbling a right of way over lands adjoining on all sides the four acres belonging to the plaintiffs, which formerly belonged to Mrs. Stribbling but had been sold and conveyed to them prior to the sale of the right of way by her. Though the deed of conveyance was not recorded at the time, the defendant had full knowledge of it, and was notified that the plaintiffs would not consent to or sell the privilege of stringing wires charged with heavy voltage of electricity over their mill and manufacturing plant. Nevertheless the defendant has erected two towers on the lands of Mrs. Stribbling adjoining that of the plaintiffs, the towers being about one thousand feet apart, and is threatening to string numbers of wires to be charged with a heavy voltage of electricity from one tower to another over and across the mills and manufacturing plant of the plaintiffs. The machinery and implements used in these mills are largely made of steel, a substance highly attractive to electricity; and the wires charged with high voltage, hanging and sagging above the mill and in close proximity to the machinery, will render it almost impossible for the plaintiffs to continue business or to operate their mills. The danger incident to the breaking of wires, and their falling upon the lumber, shavings, and other inflammable substances necessary to the operation of the plaintiffs' business, would increase the fire risk to such an extent as to make the cost of insurance almost prohibitive; and the danger and apprehension arising from working under wires so charged would render it almost impossible to secure effective labor for the operation of the mill. Moreover, the going through the plaintiffs' property, in the erection, repairing, and maintenance of the wires of the defendant, would be a constant interference with the operation of their mill. The injury will be irreparable, and the damages of a character which can not be calculated or recovered. The defendant is attempting to condemn an easement or right of way over the plaintiffs' prop-

erty, and has served notice on them of its intention so to do, and that the hearing before the assessors will be had on the 15th day of June. It is unnecessary for the defendant to pass over the property of the plaintiffs in order to establish its line of transmission, but it can be established at a small outlay upon a right of way adjoining that property. Under the statute the defendant has no authority to condemn a right of way so as to interfere with any mill or factory in operation. The prayers were, that the defendant be enjoined from further prosecuting or carrying on any proceeding for the condemnation and assessment of damages for an easement or right of way over the property of the plaintiffs; and that "the proceedings instituted within the jurisdiction of the superior court of Habersham county by the Georgia Railway & Power Company and now pending, for the condemnation and assessment of damages for an easement or right of way for its power line over petitioners' mill and mill plant, and the right to place wires and charge them with electricity over petitioners' four acres of land and upon which is situated petitioners' mill and crate factory, be stayed and perpetually enjoined." A rule to show cause and a temporary restraining order were granted.

The defendant denied the principal allegations on which the petition was based, and alleged in substance as follows: On January 23, 1912, the defendant purchased from Mrs. Stribbling for $250 a complete right of way forty feet wide across her property, and received a conveyance thereof. It has been informed that, on the evening before, the plaintiffs, with full notice of the fact that Mrs. Stribbling had sold the right of way and agreed to make a conveyance thereto, obtained from her, their mother, some sort of conveyance of the strip of land they now claim; and that this was done for the purpose of committing a fraud upon the defendant, and in effect to hold up the development and harass and "bleed" the defendant, or prevent the completion of its tower line. After purchasing the right of way from Mrs. Stribbling, it proceeded to erect towers, and completed the erection of the line of towers without placing any of them on the four acres now claimed by the plaintiffs, and it is not necessary to do so; but it is necessary to string a line of wires across and over the land from one tower to another. In doing so the wires will be about 40 feet from the ground, out of the way of any mill, machinery, or build-

ings that the plaintiffs now have upon the property, and will in nowise interfere with their operation. After the defendant commenced the erection of its power line from Tallulah Falls to Atlanta, and after a large part of it was completed, and after the survey had been completed, the plaintiffs found out where the line would cross the property of their mother, and undertook to move a small sawmill to one side of the right of way or tower line; and the defendant is informed that they obtained some sort of conveyance from their mother. The mill and machinery were not in operation at the time the defendant purchased the right of way from Mrs. Stribbling, and the corn mill and attachments were not received and located until after the towers had been erected and the plaintiffs were familiar therewith. When Mrs. Stribbling executed the deed to the defendant, she stated that she had made a deed to her children for the four acres on the preceding day. The mill and machinery of the plaintiffs are not directly under the place where the line of wires will be strung, but are located a considerable distance to one side, and the wires and electric current will in nowise interfere with the mill and machinery. The allegations of danger to the mill and machinery from fire, and of injury to persons or property, are denied. The defendant endeavored to procure by contract the right to place its wires over the property of the plaintiffs, and offered $25 for that purpose; but the plaintiffs refused to negotiate with the defendant at all, or to make any sale or contract for that purpose, but informed the defendant that it could not procure such right at any price; and the defendant was therefore forced to begin condemnation proceedings in order to obtain the necessary right of way. It has commenced proceedings for that purpose and notified the plaintiffs, and intends to proceed when permitted to do so by the court. It will only cut such trees and brush or remove such other obstruction as may now or hereafter interfere with the operation of its transmission line, or cause danger thereto by falling upon the wires. The line of towers has been constructed as nearly straight as possible between Tallulah Falls and Atlanta; and to place the line around the four acres of the plaintiffs would necessitate making four bends at practically right angles, which would cause a heavy strain on the towers and wires and subject them to great danger of breakage, and cause greater danger to persons and property. The defendant has the

legal right to exercise the power of eminent domain; and if it were prevented from placing its wires across the property of the plaintiffs, this would entirely defeat the successful transmission of electricity from its power plant at Tallulah Falls to the places of consumption. The exception in the act of 1897 in regard to a mill or factory refers to a mill or factory in operation upon some watercourse; and the legislature did not intend to refer to any mill or factory that might be located elsewhere and operated by steam. But if this were otherwise, the legislature did not intend to permit persons, after having found out the location of a water-power plant and where the line for the transmission of power is being located, to erect a temporary mill directly in the line of such proposed development for the purpose of "holding up and bleeding" the condemning company, or to prevent and destroy such development by using the exception thus made in the statute for fraudulent and illegal purposes. Any damages to the plaintiffs can be estimated and determined in the condemnation proceeding. The tower line has been secured in a direct line for almost the entire distance from Tallulah Falls to Atlanta, with very few exceptions in each county. Over 95 per cent. of the line has been procured and paid for, and it would be practically impossible for the defendant at this time to make a change in its line.

The defendant also filed a demurrer. The hearing upon the application for injunction took place on July 20. On August 3, the presiding judge passed an order containing the following: "I have concluded as follows: 1st, that I have no discretion in the premises, but that my duty is plain. 2nd, that under the issue made by the pleading and evidence the defendant has the right to proceed with its statutory condemnation proceeding. The interlocutory injunction is therefore refused, and the restraining order heretofore granted is dissolved." Whereupon the plaintiffs excepted.

When the case was reached in the Supreme Court it was submitted on briefs. The defendant also filed a motion to dismiss the writ of error, on the ground that no supersedeas was granted, and the condemnation proceedings had been carried on and completed, the right of way condemned, wires strung across the property, the right of way cleared of trees and underbrush, "and everything has been done against which injunction was prayed;" and that the

award of the arbitrators had been filed and the amount of the award deposited with the clerk of the superior court, and, though more than ten days had elapsed after the deposit, no appeal had been entered. In the original brief of counsel for the defendant in error on the motion to dismiss, it was stated that "the arbitrators having been chosen and hearing had, in which both parties were present by themselves and counsel, evidence ·introduced and argument had, and the judgment fixed the damages at $50, and the money tendered and refused, and then deposited in the office of the clerk of the superior court," etc. Accompanying this motion was an affidavit of one of counsel for defendant in error (W. S. Erwin, Esq.) to the effect that after the refusal of the injunction "said condemnation proceedings were duly had and held, resulting in an award of $50.00 as damages, by said assessors, to be paid to the said G. B. Stribbling· et al. for said right of way; that said award has been returned to the superior court of Habersham county, and the money there deposited after the same had been refused by the said G. B. Stribbling et al., and that no appeal has been entered from said award since the filing of the same. Deponent further says, that after said condemnation proceedings were had, that the Georgia Railway & Power Company proceeded in accordance with its said petition, and strung its said wires across and over the property of the said ·G. B. Stribbling et al., cut down trees, cleared up the right of way, and have occupied the same in accordance with its said condemnation proceedings, and that all of the acts and things against which injunction is prayed have been completed and finished." There was also a certificate of the clerk of the superior court, dated December 28, 1912, that the return of the assessors was filed in his office on August 24, 1912; that no appeal was taken; and that $50, the amount of the award, had been deposited, and remained subject to be paid over to G. B. Stribbling et al.

In reply the leading counsel for the plaintiffs (Hon. H. S. West, who stated that he was the sole counsel until after the denial of the injunction, and that he alone·had directly communicated with his clients) filed an affidavit in which he denied that there had been any hearing before "arbitrators" (assessors), in which both parties were present and participated by themselves and counsel. He stated, that he sent the bill of exceptions to the presiding judge by mail, and requested a supersedeas, and did not learn till some

time thereafter that it had not been granted; that he expected the judge to return the bill of exceptions to him, but some days later was notified by the clerk of the court to which the case was returnable that he had found the papers in his office, and that the adverse attorney had acknowledged service on them; that he is informed and believes that, on the day after the bill of exceptions was signed, his clients were approached to appoint an arbitrator (assessor), but declined to do so, and thereupon the company appointed as arbitrator (assessor) for his clients one of its employees; and that neither the affiant nor his associate has ever taken part or acquiesced in "the so-called arbitration or award," and he denies that they are bound thereby.

At a later date counsel for the defendant sent to this court an additional brief on the motion to dismiss, in which they stated that in their original brief they had inadvertently stated that "both parties were present by themselves and counsel;" that this was incorrect, as none of the plaintiffs or their counsel attended the condemnation proceedings; that this error crept into the brief by copying a brief in another case, and they desired to strike from their original brief the words quoted; but that they insisted that the condemnation proceedings were legally held, arbitrators (assessors) duly chosen, and parties duly notified, and the hearing had in pursuance of the notice required by law. Accompanying this additional brief was another affidavit of the same counsel who had filed the original affidavit with the motion to dismiss. He deposed in substance as follows: The condemnation proceedings were begun on May 30, 1912. The petition to enjoin against them was filed on June 13, and the injunction denied on August 3. On August 12, the ordinary of the county where the proceedings were had appointed a named person as assessor for the Stribblings, and written notice was given to the original attorney for them, and personal notice also to two of them, who were named. Another plaintiff resided out of the State, and no personal notice was given to him, but notice was given to his attorney that the condemnation proceedings would be held on the premises on August 24. The three arbitrators went first to the residence of the two plaintiffs mentioned, but they declined to go with the arbitrators upon the premises, though requested to do so. The assessors then went upon the premises and viewed them, heard evidence, and made their

award of fifty dollars. The owners refused to accept that sum,. and it was deposited with the clerk of the superior court on August 29. The condemnation proceedings were returned and filed on August 24, and no appeal was entered therefrom. After the award was so returned and the money so deposited, the condemnor proceeded to clear off the right of way and string wires "in accordance with their rights secured by the said condemnation proceedings."

Counsel for the plaintiffs also filed an additional brief and additional affidavits in opposition to the motion to dismiss. G. B. Stribbling deposed in substance as follows: He repeated the denial that parties or their counsel were present or took any part in the "so-called arbitration," and asserted, on the contrary, that they considered it illegal and void, and declined to have anything to do with it. The bill of exceptions was signed by the judge on August 24, as deponent was informed. (The certificate was dated August 22, and the entry of filing was dated August 26.) Deponent's counsel lived in Athens, and the land was located in Habersham county, 75 or 80 miles distant. On Saturday, August 24, "the arbitration" (assessment) took place. Neither deponent nor any of the plaintiffs selected an "arbitrator" (assessor), but refused to do so. The company thereupon selected and had appointed a person who, deponent is informed and believes, is regularly employed by it; and plaintiffs have since learned a "so-called arbitration was had." Deponent denied the statement in the brief accompanying the motion to dismiss that "the company then proceeded and erected towers upon this property, in accordance with the proposed condemnation proceeding." The proposed proceeding showed on its face that no towers were to be erected on this property, and none have been so erected. The injuries complained of by the plaintiffs have not been fully completed. While some wires have been strung over the property, not all of the wires "contemplated, and that can be and will be done, have yet been strung;" and more important still, none of the wires have yet been charged with electricity, and the principal apprehended damage was the sending of a high voltage of electricity over wires in close proximity to the mills of the plaintiffs, causing danger of fire from breaking, and interfering with the mills by reason of the menace arising from this high voltage of electricity overhead, and the interference with the employment of hands which will arise therefrom.

*H. S. West, E. K. Lumpkin,* and *E. K. Lumpkin Jr.,* for plaintiffs. *H. H. Dean* and *McMillan & Erwin,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. The motion to dismiss the writ of error, on the ground that since the injunction was refused, and with no supersedeas granted, everything has been done against which injunction was prayed, must be denied. The rule on this subject is clearly stated in *Tuells* v. *Torras,* 113 *Ga.* 691 (39 S. E. 455), thus: "If the judge refuses to grant an injunction to prevent the commission of a given act, and the refusal to grant the injunction is brought to this court, no supersedeas of the judgment having been obtained, and it appears to the satisfaction of the court, by uncontroverted evidence, that the act sought to be enjoined has been completed, the writ of error will be dismissed. If an issue of fact is raised as to this matter between the parties to the case, the writ of error will not be dismissed." And again: "When it is shown prima facie to the satisfaction of this court that the act sought to be enjoined has been completed, and, in response to the motion to dismiss, the plaintiff either admits the existence of the facts as claimed by the defendant in error, or fails to deny the existence of the same, the writ of error will be dismissed. But when the existence of the fact is in any way denied, either by affidavit of the party or his counsel, or by statement of counsel in open court, the motion to dismiss will be overruled."

In the case before us the defendant in error made a prima facie showing that everything had been done against which injunction was prayed. But the counter-showing tended to prove that everything against which injunction was prayed had not been fully completed. As to the attempted assessment since the signing of the bill of exceptions, the evidence seriously attacks its validity, both because of want of any statutory authority therefor and also because of the manner in which it was sought to be made. If it was invalid, this might furnish ground for an additional prayer for injunction, but, in view of the statements and counter-statements, it would hardly be ground for dismissing the writ of error. Under the briefs and affidavits, the plaintiffs will not be compelled, by dismissal of their writ of error, to waive the contention that the attempted assessment was void, and submit to it as being valid by appealing from it or receiving the amount awarded. This case does not fall

within any of those relied on by counsel for defendant in error. The last case on the subject is that of *Moody* v. *Georgia Railway & Power Co.,* ante, 102 (76 S. E. 857), where other cases are cited. There (as appears from the record on file) an injunction was sought to restrain the company from condemning a right of way or easement over certain lots, not on the ground that any mill or factory was involved and that there was no authority to condemn under the statute, but because of an alleged arbitrary and unnecessary location, and damage especially to a hotel property. The injunction was denied, and exception was taken. In this court the case was submitted on briefs, and a motion to dismiss the writ of error was made on the ground that everything had been already done against which injunction was prayed. An affidavit and certificate of the clerk were filed in support of the motion. When this court reached the case for consideration, after examining the affidavit and certificate, a rule was issued requiring the plaintiff in error to show cause why the writ of error should not be dismissed. At the time when the rule was returnable no response to it was made, and there was no traverse or denial of the facts stated in the affidavit and certificate. The writ of error was accordingly dismissed. The distinction between the two cases is apparent.

2. There was conflicting evidence in the case, but the presiding judge did not base his denial of an injunction upon the facts in controversy,. nor did he pass a general order refusing it. He expressly stated in his order that he had concluded that he had "no discretion in the premises," thus negativing any discretionary finding on conflicting evidence. The reason urged in this court in support of this statement that the judge had no discretion, but was obliged to deny the injunction, was that the exception from the right of condemnation by corporations constructing plants for generating electricity for supplying light, heat, or power to the public, contained in the Civil Code, § 5242, did not apply to a mill or factory operated by steam, but only to one in operation on a watercourse. Sections 5240 to 5242 were codified from the act of 1897. Section 5240 is as follows: "Any corporation or individual owning or controlling any water-power in this State, or location for steam plant hereinafter mentioned, and operating or constructing or preparing to construct thereon a plant or works for generating electricity by water or steam-power, to be used for the purpose of

lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public, shall have the right to purchase, lease, or condemn rights-of-way or other easements upon the lands of others in order to run lines of wires, maintain dams, flow-back water, or for other uses necessary to said purposes, upon first paying just compensation to the owners of the land to be affected." Section 5242 is as follows: "The power given under the two preceding sections shall not be used to interfere with any mill or factory actually in operation." It will be observed that the first section quoted confers the right of condemnation, not only on persons owning or controlling "any water-power in this State," but also on those owning or controlling a "location for steam plant hereinafter mentioned," and operating or constructing or preparing to construct thereon "a plant or works for generating electricity by water or steam-power," to be used as there described. And by the second section it is declared that the power given shall not be used to interfere with "any mill or factory actually in operation." It has frequently been held that acts conferring powers of this character upon individuals or corporations, being in derogation of common right, are to be strictly construed. *Carr* v. *Georgia Railroad &c. Co.,* 1 *Ga.* 524; *Young* v. *McKenzie,* 3 *Ga.* 31 (3), 40; *Justices of the Inferior Court* v. *Griffin &c. Plank Road Co.,* 9 *Ga.* 475; *Alabama Great Southern Railroad* v. *Gilbert,* 71 *Ga.* 591; *Frank* v. *City of Atlanta,* 72 *Ga.* 428 (2), 432. No good reason is suggested to us for holding that, in conferring the power of condemnation, persons operating plants either by water or steam-power are included, but, in protecting other mills or factories in actual operation, the legislature protected only those operated by water-power. There is nothing in the act to indicate that the legislative purpose to protect mills and factories in actual operation was limited to those run by water. The language is broad enough to include both classes; and there is nothing to show that the legislature meant less.

The decision in the case of *Nolan* v. *Central Georgia Power Co.,* 134 *Ga.* 201 (67 S. E. 656), does not conflict with this ruling. The question decided in that case, in the second headnote, was whether the power to condemn land to "flow-back water," conferred by the act of 1897 (Civil Code, § 5240 et seq.), included the right to condemn lands which might contain a water-power not in actual

use. The question being considered was stated on page 203. In discussing this point in the opinion, it was said (referring to what is now § 5242 of the Civil Code): "This section would be without meaning or applicability unless the act intended to give the power to back water, except where it interfered with a mill or factory in actual operation." "Applicability" to what? Palpably to the facts of the case being considered, or similar circumstances; not to some entirely different case, or imaginary circumstances wholly irrelevant to the case then in hand. Language of a discussion must be considered in the light of the question being discussed, and a sentence should not be wrenched from its context and used as proof of a wholly different proposition.

3. Much of the brief of counsel for defendant in error was devoted to contentions that the evidence showed that the line of towers and the wires were not near enough to the machinery of the plaintiffs to cause interference therewith; that one who erects a mill with knowledge and in the face of an approaching public improvement, not bona fide, but for the purpose of obstructing or preventing condemnation, is not entitled to the benefit of the statutory exemption; and that a person could not, after ascertaining that a line of wires would pass over his property, remove a portable mill from another part of it so as to occupy the proposed right of way of the line about to be erected, and obstruct it, and then obtain an injunction to restrain interference with such a mill. Without determining the questions of law or fact involved in these contentions, it is sufficient to say again that the presiding judge evidently did not base his judgment upon them, or upon the conflicting evidence, but upon the theory that he had "no discretion in the premises." As he determined the case on an erroneous view of the law, binding him, as he apparently thought, upon a single point, the case is returned with direction that it be reheard upon its merits.

*Judgment reversed, with direction. All the Justices concur.*