## 30626. HERLONG v. THE STATE.

PER CURIAM.

James Gandy and James Herlong, Jr. were indicted, tried and convicted for murder. Each received a life sentence. Herlong filed the present appeal.

1. Charlie Davis, a retired railroad employee and bootlegger, left his home, where he lived with his wife in Ashburn, Turner County, Georgia, at 6:30 p.m. on Saturday, January 19, 1974. When he failed to return home the following morning, his wife began searching for him. At approximately 2 p.m. on Sunday afternoon his wife and her nephew sighted the automobile he had left home in the night before approximately one and one-half miles from his home parked in a rear yard of the Gold Kist Peanut Company. The ignition keys were missing. They drove the automobile to his home by "straight-wiring" the switch and upon arrival there they noticed blood on the fender and body of the automobile. They removed the back seat, found Davis' body stuffed in the trunk and called the police. A medical examination of the victim's body showed that he had been shot twice, once in the back of the head and once near the temple. Two .22 caliber bullets were removed from the victim's brain and delivered to State Crime Laboratory personnel. This medical examination also showed that the victim had five or six wounds in the head area inflicted by some sharp instrument. The examination was inconclusive as to whether the blows on the head or the bullet wounds were the cause of death, but either could have caused the victim's death.

An investigation to determine the last persons to see the victim alive led them to the state's witness, Rena Mae Brown, the appellants Herlong and Gandy, as well as others. As a result of such interrogation, a homemade pistol was obtained from Herlong's house trailer but none of these three named persons was kept under arrest. Testimony was adduced at the trial that tests made to determine if the bullets removed from the victim were fired by the pistol found in Herlong's trailer were inconclusive.

While Herlong, Gandy, and Brown had all denied any knowledge of the crime during their first interview, further investigation resulted in an additional interview with Brown on Wednesday. On Thursday, with her consent, she was administered a polygraph test. Immediately following such polygraph test, arrest warrants were signed charging Gandy and Herlong with murder.

After Gandy and Herlong were arrested, Gandy, after having been advised of his constitutional rights, made a statement in which he admitted being present at the time the victim was slain and that he had "tapped" the victim on the head with an iron pipe. On Saturday after his arrest on Thursday, Herlong told the sheriff that he had heard there were car keys and an iron pipe placed in a well some two miles east of Ashburn and that they had been placed there by a named individual. On Monday Herlong told a Georgia Bureau of Investigation agent that the named individual had come to his trailer on the night of the murder and told him that he had killed a man with a length of iron pipe and a pistol and had thrown these items in a well behind such person's residence. With a large magnet, the GBI agent retrieved a 24-inch length of iron pipe and two keys, one of which fit the ignition key on the victim's automobile.

While Herlong testified on the trial of the case that he never left his home on the night of the murder, and while his girl friend testified that she was there with him until the approximate time of the murder, yet the testimony of Gandy and Rena Mae Brown authorized the finding by the jury that Herlong and Gandy approached Davis and offered to buy liquor from him, that Davis

(accompanied by Rena Mae Brown) drove Herlong and Gandy to the area where the murder occurred, that when Davis got out of the automobile, walked to the back, opened the trunk to obtain the liquor to be sold to the defendants, he was shot by Herlong and beaten over the head by Gandy, which shooting and beating caused his death. The verdict of guilty was authorized by the evidence.

2. Under decisions exemplified by *Sinkfield v. State,* 231 Ga. 875 (2) (204 SE2d 588) (1974), it was not error to admit into evidence a handgun found at the home of the defendant Herlong where there was testimony that such gun was similar and looked like the gun used in the homicide.

3. The sole remaining enumeration of error to be considered complains that the trial court erred in admitting testimony that the witness Rena Mae Brown was given a lie detector test and that immediately thereafter arrest warrants were obtained. The appellant relies upon the decision in *Stack v. State,* 234 Ga. 19, 23 (214 SE2d 514) (1975) and makes the contention that such testimony imputes veracity to the testimony of Rena Mae Brown by raising an inference that such lie detector (polygraph) test showed her testimony implicating Herlong to be true. The decision in *Stack* did not require, as a matter of law, that a new trial be granted on every occasion where a jury is apprised that a lie detector test has been given.

The admission of the evidence in this case that Rena Mae Brown had been given a lie detector test and that immediately thereafter arrest warrants were obtained for the defendants was not error. This testimony was admissible to explain the conduct of the officers. See Code § 38-302.

In *Stack v. State,* supra, (p. 21), it was held: "It is the general rule in most jurisdictions that the results of a lie detector test are inadmissible when offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime, whether offered by the accused or the prosecution. This rule is based on the present scientific unreliability of such tests (29 AmJur2d 923, Evidence, § 831), and has been clearly adopted by the courts of this

state. *Salisbury v. State,* 221 Ga. 718 (146 SE2d 776); *Wallace v. Moss,* 121 Ga. App. 366 (174 SE2d 196); and *Cagle v. State,* 132 Ga. App. 227 (2) (207 SE2d 703)."

The evidence that the witness had been given a lie detector test was admissible to explain the conduct of the officers.

In this case, unlike the situation dealt with in *Stack,* supra, the jury was not faced with the problem of accepting the testimony of the defendant or the testimony of an accomplice who had turned state's evidence. No harmful error resulted from the admission of such evidence.

No error of law appearing, the judgment of the trial court must be affirmed.

*Judgment affirmed. All the Justices concur, except Gunter, Jordan and Hill, JJ., who dissent.*

ARGUED JANUARY 13, 1976 — DECIDED FEBRUARY 11, 1976 — REHEARING DENIED FEBRUARY 24, 1976.

*Floyd H. Wardlow, Jr.,* for appellant.

*William J. Forehand, District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

JORDAN, Justice, dissenting.

In my opinion the trial court erred in admitting testimony that the witness Rena Mae Brown was given a lie detector test and that immediately thereafter arrest warrants were obtained. The contention is made that such testimony imputes veracity to the testimony of Rena Mae Brown by raising an inference that such lie detector (polygraph) test showed her testimony implicating Herlong to be true.

In *Stack v. State,* 234 Ga. 19, 23 (214 SE2d 514) (1975), this court quoted the following language from the decision in Johnson v. State (Fla. App.), 166 S2d 798: " 'On the basis of an analysis of the cases hereinbefore discussed we conclude that while neither the results of a lie detector examination nor testimony which indirectly or inferentially apprises a jury of the results of a lie detector examination is admissible into evidence, the mere fact that the jury is apprised that a lie detector test

was taken is not necessarily prejudicial *if* no inference as to the result is raised or *if* any inferences that might be raised as to the result are not prejudicial. This determination should not, of course, encourage attempts to introduce evidence concerning lie detectors. As is clear from the cited cases, such evidence is liable to be prejudicial and should be admitted only when clearly relevant and unmistakably nonprejudicial."

Under the decision in *Stack v. State,* supra, the trial court erred in permitting testimony that the lie detector test was given to the witness Rena Mae Brown and, immediately following, arrest warrants were issued for the defendants. As to the defendant Herlong, it cannot be said that such evidence was harmless.

I am authorized to state that Justices Gunter and Hill concur in this dissent.

HILL, Justice, dissenting.

I join the dissent of Justice Jordan and wish to add only two additional comments.

A recurring criticism by the public, lawyers and judges is that the law is too complicated. The majority decision in this case holds that evidence that the witness was given a lie detector test and that immediately thereafter an arrest warrant was obtained for this defendant, was admissible under Code § 38-302 to explain the officers' conduct.

Although the jury was instructed to determine the credibility of the witnesses, they unfortunately were not instructed that lie detector tests are unreliable and that the evidence that the witness was given a lie detector test was to be considered by them not for the purpose of determining the credibility of the witness but solely for the purpose of explaining the conduct of the officer.

Of equal or greater importance to me is that heretofore the Georgia law in this area has been uncomplicated, to wit: evidence regarding lie detector examination is inadmissible. See *Stack v. State,* 234 Ga. 19 (214 SE2d 514) (1975); *Salisbury v. State,* 221 Ga. 718(4) (146 SE2d 776) (1966); *Wallace v. Moss,* 121 Ga. App. 366(1) (174 SE2d 196) (1970); *Cagle v. State,* 132 Ga. App. 227(2) (207 SE2d 703) (1974).

Now the majority holds that evidence regarding lie detector examination of a witness was admissible in this case. We had simplicity before, complexity now.

Certain exceptions to legal principles are necessary, of course. Therefore a certain amount of complexity is necessary. However, in my view there is no necessity here for this exception and thus no reason in my view for this complication. I fear that this exception will cause unnecessary legal problems in the future and I therefore join in dissenting in this case.