## 30995. PORTER v. THE STATE.

HALL, Justice.

Appellant Porter appeals from her conviction and life
sentence for murder. The victim, stabbed some 65 times,
was discovered in a motel room with her three-year-old
daughter. On this appeal, we consider the exclusion of
prospective jurors with scruples against the death
penalty; the refusal of the trial court to permit the child to
testify; and an improper reference by one witness to a
polygraph test. We find no error and affirm the convic-
tion.

1. Appellant argues that exclusion of death-scrupled
jurors from the guilt phase of her trial, under the
authority of Witherspoon v. Illinois, 391 U. S. 510 (1968),
was unnecessary and deprived her of a valid cross section
of the community on the issue of guilt. Appellant offered
to accept a verdict on punishment by fewer than twelve, as
a means of accommodating her request that jurors with
scruples against the death penalty be permitted to serve
during the guilt determination phase though the state
would be entitled to disallow their participation in
deciding punishment. The trial court refused this request.

Traditionally, this court has simply ruled that an
appellant not sentenced to death is without standing to
raise this issue. E. g., *Lindsey v. State,* 234 Ga. 874, 875
(218 SE2d 585)(1975); *Davis v. State,* 234 Ga. 730, 731
(218 SE2d 20)(1975). But we read the present argument to
claim an unconstitutional jury on the guilt issue, which
plainly appellant has standing to raise. Considered on
the merits, however, the claim is unpersuasive because
it argues that death-scrupled jurors constitute a

recognizable class, representation of which is necessary on the guilt phase to grant a valid cross section of the community. This argument was specifically rejected by the Supreme Court in Witherspoon, supra, 391 U. S. at 518. Appellant cites Labat v. Bennett, 365 F2d 698 (5th Cir. 1966) which did indeed have broad "cross section" import at the time of its decision. See Note, 1967 Duke L. J. 346 (1967). But Witherspoon rejected such a reading with respect to death-scrupled jurymen as a class, where the guilt determination phase was involved. See Comment, Jury Challenges, Capital Punishment and Labat v. Bennett: A Reconciliation, 1968 Duke L. J. 283 (1968) cited in Witherspoon, supra, 391 U. S. at 515-516, n. 9.

Appellant's jury was not unconstitutionally composed.

2. It appeared almost certain from the evidence that the victim's three-year-old daughter Paula had been in the room with her mother during the murder. The trial court refused even to examine the child as a potential witness and ruled that she was incompetent because of infancy. Enumerations of error two and three argue that the requirements of due process and of Code Ann. § 38-1610 (requiring the court to examine witnesses to decide incompetency) mandate an examination and the court erred in presuming the child incompetent.

The competency of a witness is for the court to decide in its discretion (Code Ann. § 38-1601), and this decision will not be overturned in absence of abuse of discretion (*Geter v. State*, 231 Ga. 615, 617 (203 SE2d 195) (1974)). Children who do not understand the nature of an oath are incompetent. Code Ann. § 38-1607; *Young v. State*, 122 Ga. 725 (50 SE 996)(1905).

Based upon her father's testimony of the child's birth date, she was two years and eleven months old at the time of the killing, and three years and two months old at the time of the trial. There was testimony which tended to show her somewhat inappropriate responses and non-responses when others had addressed her after the discovery of the body.

On the record before us, we cannot conclude under Code Ann. § 38-1610, nor due process, nor *Schamroth v.*

*State,* 84 Ga. App. 580 (66 SE2d 413) (1951), that the court erred in conclusively presuming this child incompetent. Appellant is correct in pointing to Fields v. State, 500 SW2d 500 (Tex. Crim. App. 1973), in which a four-year-old witness to murder was permitted to testify; and Wheeler v. United States, 159 U. S. 523 (1895) allowing a five-and-one-half-year-old witness. However, the United States Supreme Court in Wheeler wrote that ". . . no one would think of calling as a witness an infant only two or three years old. . ." 159 U. S. at 524.

These enumerations are without merit.

3. Deputy Cantrell's mention of the word "polygraph" presents no issue of substance. The record shows that the most damaging evidence against appellant was given by one Lawless, who was originally charged with appellant for the crime but who testified for the state under a grant of immunity. Defense counsel was pressing Cantrell on the general subject of the time at which Lawless had begun to tell the story he told at trial, and, after 18 transcript pages of·cross examination, Cantrell testified "The first time Lawless ever gave any indication of knowing what has happened was immediately after we took a polygraph test and . . ." The testimony was interrupted; the jury was removed; the court refused to grant a mistrial or to allow any further mention of a polygraph test and refused defense requests to pursue the question whether Cantrell's mention of the polygraph test was somehow a deliberate violation of the warnings to all witnesses. The jury upon their return was told to disregard the answer.

The refusal of the mistrial motion .and of requested cross examination were not error. Cantrell's statement did not say to whom the polygraph test was given, what was learned, whether the subject "passed" it or "failed" it, or anything of substance. The most the jury could have learned was that *someone* was given a polygraph test and *thereafter* Lawless admitted knowing something of what happened.

In *Stack v. State,* 234 Ga. 19 (214 SE2d 514) (1975) we reversed when a polygraph operator was permitted to testify to a conversation with defendant during the period when the test was being administered. But the *Stack*

issues are not present here. As we wrote in *Herlong v. State*, 236 Ga. 326, 328 (223 SE2d 672) (1976), "The decision in *Stack* did not require, as a matter of law, that a new trial be granted on every occasion where a jury is apprised that a lie detector test has been given." These enumerations are without merit. Accord, People v. Baker, 7 Mich. App. 471 (152 NW2d 43)(1967).

*Judgment affirmed. All the Justices concur, except Jordan, J., who concurs in Divisions 1 and 3 and the judgment, Ingram, J., who dissents as to Division 2 and Gunter and Hill, JJ., who dissent as to Divisions 2 and 3.*

ARGUED APRIL 13, 1976 — DECIDED SEPTEMBER 9, 1976 — REHEARING DENIED SEPTEMBER 28, 1976.

Murder. Whitfield Superior Court. Before Judge Vining.

*Millard C. Farmer, Jr.,* for appellant.


HILL, Justice, dissenting.

The victim and the defendant knew each other, the defendant having cared for the victim's child. The victim and the defendant had had fights and the victim had obtained a warrant against the defendant. Nevertheless, the evidence against the defendant was entirely circumstantial.

L. B. Lawless was the state's chief witness. He testified that he and the defendant visited the victim in her motel room at about 3 a.m. on the date of the murder. The victim's daughter was asleep. Lawless and the defendant returned to his apartment. According to Lawless, the defendant then borrowed his truck saying that she was going back to see the victim. According to Lawless, upon her return the defendant said "I'm in trouble, I need an alibi." Lawless arranged an alibi for himself and the defendant. Lawless testified that he had been granted immunity.

According to the defendant, upon arriving at Lawless' apartment Lawless returned to his truck, she went to sleep until the next morning and could not say what Lawless did.

The lady who baby-sat with the victim's daughter

after discovery of the body was examined at trial concerning the child's ability to recognize the defendant. She testified that " . . . I believe she could identify the killer, is what I believe. If that's what you are driving at. I believe the child is capable of identifying him."

The defendant moved for an order prohibiting witnesses from discussing any polygraph tests. The motion was granted. The state's chief investigative officer heard the court's ruling as to polygraph tests.

The chief investigative officer testified that Lawless had made a taped statement. The officer was asked when Lawless first told police the story he gave as a witness. The officer answered: "The first time Lawless ever gave any indication of knowing what had happened was immediately after we took a polygraph test and ——." The witness was interrupted by counsel's motion for mistrial.

The jury could have been under the impression that the state's principal witness, Lawless, decided to "tell the truth" after taking a polygraph test. However, a person can lie after taking a polygraph test just as he can during or before a polygraph test.

The question related to the first time Lawless told police the story he repeated on the witness stand; the witness' answer related to the first time Lawless ever gave any indication of knowing what happened; the answer (given by an experienced police officer who had heard the trial judge's ruling) was unresponsive to the question. I dissent. See *Herlong v. State,* 236 Ga. 326, 329 (223 SE2d 672) (1976), dissenting opinions by Justice Jordan and this writer.

A new trial being necessary in my view, I would apply Code § 38-1610 which provides: "The court *shall, by examination,* decide upon the capacity of one alleged to be incompetent from . . . infancy." (Emphasis supplied.) The trial court might find that the child would say that a man killed her mother. If so, a jury should not convict this defendant without knowing what the· child would say.

The majority opinion, in my view, overrules or, more likely, overlooks the well-established rule of law that where a judge vested with discretion rules without exercising that discretion, such ruling is erroneous. *Ballard v. Waites,* 194 Ga. 427, 430 (21 SE2d 848) (1942);

*Stribling v. Georgia R. &c. Co.,* 139 Ga. 676 (3) (78 SE 42); (1913); *Hill v. Wadley Southern R. Co.,* 128 Ga. 705 (7) (57 SE 795) (1907); *Thompson v. Warren,* 118 Ga. 644 (2) (45 SE 912) (1903); *Fears v. State,* 102 Ga. 274 (5) (29 SE 463) (1897).

I would grant the defendant a new trial.