## 29324. STACK v. THE STATE.

JORDAN, Justice.

This case is before this court on appeal and for mandatory review of the death sentence imposed. The appellant and Wes Ramer were indicted in Fulton County Georgia for the murder of Frank A. Meinke occurring on September 2, 1973; Wes Ramer entered a plea of guilty to voluntary manslaughter in return for a 15-year sentence. Appellant's trial began on December 4, 1973, and sentence was imposed on December 6, 1973.

Evidence introduced during the trial was to the following effect:

On Saturday, September 1, 1973, appellant Howard Jackson Stack, and Wes Ramer were residing at 875 Piedmont Avenue, in Atlanta. Frank Meinke, the victim, was the manager of a rooming house at that address. The occupants of the house were described as alcohol-oriented. Appellant had argued with the victim on Friday evening or Saturday morning over the presence of a Negro tenant, Billy Jinks. Appellant left the house and returned later Saturday night. During the course of the day, Ramer, along with several other tenants and the victim, had been drinking.

Ramer testified as follows: That appellant returned to the house that night, drank some with the others, and then left again. Ramer escorted Meinke back to his room and returned to his own room, where he drank some more and went to sleep. Appellant woke Ramer up during the night and asked him to go downstairs with him. He and appellant then went to the victim's room and entered it while Meinke was asleep. Appellant stabbed the victim first and then urged Ramer to join in, which he did. He and appellant then went back upstairs and washed their hands. Ramer continued drinking and eventually went to bed.

The doctor who examined Meinke's body found approximately 20 stab wounds in the upper part of his body and testified that any one of several of such wounds could have produced death.

Appellant denied having participated in the murder, and stated that he had never been inside the victim's room. He last saw the victim being taken back to his room by Ramer at approximately 11 p.m. He saw Ramer several hours later washing his hands, and Ramer told him that there had been a fight and that he thought he had hurt Meinke.

After obtaining $15 from Ramer, appellant left town and was subsequently located and arrested in Jacksonville, Florida on September 27, 1973. Appellant testified that he had left town after the murder because he was an escapee from a North Carolina Penal Institution and feared discovery.

1. In Enumeration 5, appellant alleged error by the trial court in overruling his amended motion for new trial

on each and every ground thereof.

This motion incorporates four grounds not specifically enumerated as error elsewhere in this appeal:

(a) That the court erred by admitting testimony of Wes Ramer concerning an argument between appellant and one Billy Jinks.

The purpose of this testimony and testimony of Billy Jinks who testified that appellant had "jumped on" him and had subsequently argued with the victim about this fight was to show motive and to illustrate the state of feeling between the two men and was admissible for this purpose. *Foster v. State,* 230 Ga. 666 (1) (198 SE2d 847); *Scott v. State,* 214 Ga. 154 (103 SE2d 545).

(b) That the court erred in refusing to direct a verdict for acquittal.

The court did not err in refusing a directed verdict because a co-indictee prosecution witness made inconsistent statements at the trial and had been offered a fifteen-year sentence in return for his testimony at appellant's trial where it was brought out by the state, giving the jury the background and facts weighing on the witness' credibility. *Echols v. State,* 231 Ga. 633 (1) (203 SE2d 165); Giglio v. United States, 405 U. S. 150; *Geter v. State,* 231 Ga. 615, 618 (203 SE2d 195).

(c) That the court erred by admitting the testimony of a polygraph operator and the tape he made of certain incriminating statements made to him by appellant when he submitted to a polygraph test.

It is the general rule in most jurisdictions that the results of a lie detector test are inadmissible when offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime, whether offered by the accused or the prosecution. This rule is based on the present scientific unreliability of such tests (29 AmJur2d 923, Evidence, § 831), and has been clearly adopted by the courts of this state. *Salisbury v. State,* 221 Ga. 718 (146 SE2d 776); *Wallace v. Moss,* 121 Ga. App. 366 (174 SE2d 196); and *Cagle v. State,* 132 Ga. App. 227 (2) (207 SE2d 703).

This rule was recognized by the trial judge, who correctly held that the *results* of the polygraph test could not be admitted into evidence, but over strenuous ob-

jection from defendant's counsel allowed the polygraph operator to testify as to certain statements made to him during the progress of the test.

To determine whether under such circumstances this incriminating conversation was admissible we must look to the record surrounding its admission. The state's main witness was Wes Ramer, the purported accomplice of the defendant, who testified that he and the defendant entered the room of the deceased while he was asleep, that both of them stabbed him several times, then left the room and returned to their quarters where they washed the blood from their hands. Ramer further testified that on a plea bargain he had entered a plea to involuntary manslaughter and been given a 15-year sentence.

After this testimony the state offered witness Robinson of W. A. Robinson Associates, who testified that he was a polygraph operator; that he gave a test to Wes Ramer who told him during the test that he and appellant Stack killed the deceased and that Ramer signed a statement to that effect. Robinson testified that he saw Stack at the time he was testing Ramer and that Stack was "in another room taking a polygraph test"; that a statement was prepared for Stack but that he refused to sign it.

The state, still presenting its case in chief, then called witness McDaniel to the stand who identified himself as a polygraph examiner for W. A. Robinson Associates. Upon continued objection by defense counsel "as to results or any conversation that took place during the polygraph examination," a colloquy ensued between the court and counsel with the district attorney stating that, "I just asked him if he administered the tests for the purpose of letting the jury know where he had seen this man before." The state then tendered into evidence a document which was identified by witness McDaniel as "a statement of consent which must be signed by any person prior to admission of a polygraph examination" and that Stack signed the same in his presence. Defense counsel objected to the admission of this document and at this point the court excused the jury. The state withdrew the proffered document and the court then conducted a hearing outside the presence of the jury. The court

determined that the statements made by Stack to the polygraph operator were freely and voluntarily made and that such testimony would be admitted.

When the jury was recalled, witness McDaniel then testified that Stack told him he was in the room with Ramer when Meinke was killed and that they then left the room and went upstairs and washed their hands. This witness was later allowed in rebuttal to play a portion of a tape recording made at the time the test was made, which recording tended to verify McDaniel's verbal testimony.

We must determine from the above circumstances if any inferences were raised as to the results of the test which were prejudicial to the defendant and whether the state indirectly injected into the case evidence otherwise inadmissible. After a careful examination of the entire record we conclude that this evidence was erroneously admitted and that it cannot be said under these circumstances to have been "unmistakably unprejudicial."

There is a paucity of cases on this precise issue in other jurisdictions and is a matter of first impression in this state. The case perhaps closest on point is that of Johnson v. State (Fla. App.), 166 S2d 798. In that case the court approved the admission into evidence of a conversation between the accused and a polygraph operator but apparently on the basis that the jury could not have known the witness was a polygraph operator "prior to the disclosure of this fact by the defense." Under the facts of the case sub judice it is clear that the identity of the witness McDaniel as a polygraph operator was made known to the jury by the state while presenting its case and the jury was informed that he had given a lie detector test to the defendant. The Johnson case, supra, contains a rather exhaustive study of the cases touching on this subject and concludes:

"On the basis of an analysis of the cases hereinbefore discussed we conclude that while neither the results of a lie detector examination nor testimony which indirectly or inferentially apprises a jury of the results of a lie detector examination is admissible into evidence, the mere fact that the jury is apprised that a lie detector test was taken is not necessarily prejudicial *if* no inference as

to the result is raised or *if* any inferences that might be raised as to the result are not prejudicial. This determination should not, of course, encourage attempts to introduce evidence concerning lie detectors. As is clear from the cited cases, such evidence is liable to be prejudicial and should be admitted only when clearly relevant and unmistakably nonprejudicial."

A Pennsylvania case, Commonwealth v. Jones, 341 Pa. 541 (19 A2d 389) (1941), held that a confession was not rendered inadmissible because of the fact that a lie detector was employed during the interrogation of the defendant. A Wisconsin case, State v. DeHart, 242 Wis. 562 (8 NW2d 360) (1943) held that a signed confession is not rendered inadmissible by reason of the fact that the defendant voluntarily submitted to a lie detector test and signed the confession after having been subjected to the test. The facts in the case under consideration show that the defendant, Stack, never made or signed a written confession. A Colorado case held that where a confession was made after the defendant was subjected to a lie detector test for a long period of time, together with other coercive treatment, the confession was held to be inadmissible. Bruner v. People, 113 Colo. 194 (156 P2d 111) (1945).

It must be borne in mind that the credibility of the defendant, who was sworn as a witness, was a vital issue. Outside the testimony of the polygraph operator, his guilt or innocence primarily depended on whether the jury believed his testimony or that of his alleged accomplice. The jury learned that both Wes Ramer and Stack were given polygraph tests. They were not allowed to hear the results of such tests. They might well have inferred that since Ramer was allowed to enter a plea of voluntary manslaughter and receive a 15-year sentence while the state was demanding the death penalty for Stack, that Ramer had passed his lie detector test while Stack had miserably failed his. If such an inference could have been reasonably drawn by the jury, which we think it could have, we cannot say that such an inference was "unmistakably nonprejudicial."

We think that a critical fact here is the statements by the defendant made to the polygraph operator during

the time the test was in progress. This is clear from McDaniel's testimony that when the statements were made that the "instruments were attached to Stack" though the instruments were not functioning at all times during the test, and that "as a rule" the person being tested would not know whether the instruments were on or off.

We do not here hold that the "polygraph is a poisonous tree whose every fruit is forbidden" nor is this holding in conflict with what was said in *Johnson v. Aetna Ins. Co.,* 124 Ga. App. 112 (183 SE2d 85) where after recognizing the exclusionary rule as to the results of a polygraph test, the court stated that the rule "cannot be extended to cover admissions which are otherwise competent and admissible simply because the admissions were given *after* the taking of lie detector tests." (Emphasis supplied.)

Under the facts here, where the jury was made aware by the state that its witness was a polygraph operator who had administered a test to the defendant, it was error to admit testimony relating to the conversation with the defendant during the period when such test was being administered.

The admission of this testimony in a close evidentiary factual situation, such as exists here, was particularly harmful to the defendant. We note in the trial judge's report filed with this court that the answer "no" to the question addressed to him as to whether the evidence forecloses all doubt respecting the defendant's guilt.

(d) That the court erred by reopening the evidence and allowing the introduction into evidence of a prior killing by appellant and refusing to grant a mistrial.

Appellant testified on direct examination that he had never killed anyone in his whole life. The court properly permitted the district attorney to present rebuttal evidence for the purpose of impeaching these statements of appellant. *Campbell v. State,* 231 Ga. 69 (3) (200 SE2d 690); *Colbert v. State,* 124 Ga. App. 283 (2) (183 SE2d 476).

2. In Enumeration 7, appellant alleges that the trial court erred in limiting the examination on voir dire to

questions dealing directly with the case on trial and in refusing to allow technical legal questions.

The question asked was: "If you should believe that the defendant might be guilty, but the state has not proven this beyond a reasonable doubt, would your verdict be guilty or not guilty?"

Code Ann. § 59-705 provides in part that "the counsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the cause, including any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning or bias which the juror might have respecting the subject-matter of the suit, or counsel or parties thereto, and religious, social and fraternal connections of the juror."

The question asked being a technical legal question concerning the presumption of innocence, as subject of instruction by the court at the conclusion of the trial, was properly limited by the trial judge and he did not abuse his discretion in so doing. *King v. State,* 230 Ga. 581 (1) (198 SE2d 305); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *McNeal v. State,* 228 Ga. 633 (3) (187 SE2d 271); *Pinion v. State,* 225 Ga. 36 (4) (165 SE2d 708).

3. In Enumeration 9 appellant alleges the court erred in failing and refusing to grant the following motion of defense counsel:

"I'd like to make a motion for automatic sentencing of this man to a life imprisonment on the grounds that the statute providing for a choice by the jury of a life or death is unconstitutional."

This contention by the appellant has been considered and rejected in other decisions of this court. We see no reason to overturn those decisions. The trial court did not err in denying motion of appellant's counsel.

4. In Enumerations 10 and 11 appellant alleges that the court improperly admitted into evidence at the pre-sentence hearing, over objection, stale convictions of unrelated non-violent crimes and previous convictions when the defendant was not represented by counsel.

The transcript clearly indicates that appellant ob-

jected only to Exhibit 15 on the basis that he was not represented by counsel. That exhibit indicates that the accused was represented by counsel.

Although the conviction represented by Exhibit 16 was in 1938 and that represented by Exhibit 15 was in 1946, they were properly admitted. Code Ann. § 27-2534 provides in part for admission during pre-sentence hearings in felony cases of "the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any such prior convictions and pleas" without regard to when the convictions occurred as long as it was a prior conviction.

Accordingly, these enumerations are without merit.

5. Appellant's enumeration of error number 12 that the court erred in admitting, over objections, photographs of the deceased to inflame the jury is without merit.

6. The gist of appellant's contentions in Enumerations 13, 14, and 16 is that the judge erred in repeating a part of his instructions in the sentence phase of the trial thereby putting the appellant in jeopardy a second time by implying an opinion by his repeated instructions.

No verdict other than the final one was ever published. Although the trial judge repeated instructions concerning the necessity to find an aggravating circumstance beyond a reasonable doubt before a death sentence can be imposed as required by Code Ann. § 27-2534 et seq., there is no contention that the trial judge in the original charge, or in the additional charge given to the jury, instructed the jury contrary to law and it is not necessary to recharge to cover the subject in toto. *Waldrop v. State,* 221 Ga. 319 (8) (144 SE2d 372); *Creamer v. State,* 229 Ga. 704, 709 (194 SE2d 73).

7. The general grounds and certain other enumerations of error are not passed on since the evidence might be different on another trial.

8. For the reasons stated in Division 1 (c) of this opinion, the trial court erred in overruling the amended motion for new trial.

*Judgment reversed. All the Justices concur, except Hall, J., who concurs specially, Gunter, J., who concurs in the judgment only, and Nichols, C. J., and Undercofler, P.*

*J., who dissent.*

Argued October 17, 1974 — Decided March 18, 1975 — Rehearing denied March 25, 1975.

*Grace W. Thomas,* for appellant.

*Lewis R. Slaton, District Attorney, Carole E. Wall, Assistant District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.

Hall, Justice, concurring specially.

I concur in the decision of reversal and in everything that is said in the majority opinion except Division 1 (c).

I do not understand that division to conform to the rule we have heretofore adopted concerning the admissibility of a defendant's statements made during a polygraph examination. Rather, I would reverse for the reason that this is a death case in which there are, for me, simply too many unresolved questions concerning the possible impact upon the jury of the polygraph examiner's testimony. He was the main witness against Stack, and aside from his testimony there was virtually nothing connecting Stack to this crime except the testimony of an admitted killer who had successfully bargained with the state for a reduced sentence. The polygraph operator was recalled to the stand numerous times, and the prosecution played to the jury a tape of certain of his verbal interchanges with Stack. His examination and cross examination were, at least at times, characterized by loosely framed questions and halting or unsure responses, leaving important questions unanswered. Considering all these facts, I cannot say that the state did not possibly leave in the jury's mind a prejudicial implication that Stack had been given a polygraph examination and had been determined to be a liar.

Undercofler, Presiding Justice, dissenting.

I dissent from the ruling made in Division 1 (c) and from the judgment of reversal. The majority has reversed this case for the reason that the jury might have drawn an inference that the appellant might have failed a lie

detector test and therefore the results of the test were indirectly placed before the jury because the alleged co-conspirator Ramer took a lie detector test and entered a guilty plea. This is sheer speculation. There was no evidence of the results of either test before the jury and this is not an issue in the case.

The issue to be decided here is whether an incriminating statement given during a lie detector test by a private independent polygraph operator is admissible in evidence. This depends upon whether the incriminating statement was freely and voluntarily given. The evidence here shows clearly that the incriminating statement was given freely and voluntarily. The appellant requested the test, he was given the Miranda warnings prior to the test and waived his constitutional right to counsel and to remain silent, and he was apprised that anything he said could be used against him. During a "break" in the test he voluntarily told the polygraph operator that he had been present during the murder. Under these circumstances the weight of authority holds that this incriminating statement is admissible. So long as a person has been advised of his rights as required by Miranda and waives them, I see no difference in admitting a voluntary statement given to a police officer in an in-custody interrogation and a statement given to a private independent polygraph operator as here. 23 ALR2d 1306, 1310, § 5; 19-24 ALR2d Later Case Service 731, § 5. See also *Johnson v. Aetna Ins. Co.,* 124 Ga. App. 112 (183 SE2d 85).

The majority has also misconstrued the trial judge's post-conviction report. The question asked was, "Although the evidence suffices to sustain the verdict, does it foreclose all doubt respecting the defendant's guilt?" The trial judge answering "no" merely indicated that there was a jury question in the case. Furthermore, the evidence need only establish guilt beyond a reasonable doubt, not guilt beyond all doubt.

I am authorized to state that Chief Justice Nichols concurs in this dissent.