### 35512. THOMAS v. THE STATE.

UNDERCOFLER, Presiding Justice.

Emanuel Thomas appeals his conviction of murder and sentence to life imprisonment. We affirm.

1. A rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, —- U. S. —- (99 SC 2781, 61 LE2d 560) (1979). The state proved the victim, Mattie Bell Thomas, 16, lived with her mother, father and several sisters and brothers in Rutledge, Morgan County. The appellant, brother of the victim's father, also lived with the family. A sister and the mother testified they left the house on the morning of February 27, 1978, around 8:20 a.m., leaving the victim asleep and the appellant as the only other occupant of the house. At 4:20 p.m., police were summoned by a sister who upon returning from school had found the victim dead, covered with a sheet and a blanket, a single gunshot wound in her left temple. Police searched the bedroom and found no other physical evidence of the crime; however, they seized four guns, including a .22 caliber semi-automatic rifle, from a closet in the bedroom where appellant slept with his brother. The next day, an aunt,

cleaning the victim's bedroom, found an ejected .22 caliber shell casing under the bed and turned it over to police. Expert testimony identified the casing as having the same firing pin impression, extractor and injector markings as those made by the .22 caliber rifle and concluded that the casing had been fired by this rifle. The expert could not, however, tell when the shell had been fired nor could he make a comparison test on the .22 caliber lead bullet taken from the victim's head because the pellet had "mushroomed." Other expert testimony advanced the theory that the victim had had sexual intercourse recently. On February 28, 1978, appellant was arrested when he returned from Madison where he had fled. The evidence showed the Miranda warnings were administered by the Rutledge police at this time. Later, GBI agent Edwards interrogated appellant and when it became apparent that he had only a third grade education and could neither read nor write, the Miranda warnings were administered from the card, then, sentence by sentence, read to appellant and an acknowledgment received that "he knew what each sentence meant." Before this interview could be completed, appellant was removed to the Georgia State Patrol headquarters at Madison because there was too much noise at the Rutledge police station. In Madison, the Miranda warnings were repeated as before and the acknowledgments received. Afterwards, appellant consented to talk to officers. A statement was obtained and later reduced to writing. Appellant signed the statement by putting two "X's" at the end. This "signature" was witnessed by two agents. Following a Jackson-Denno hearing at which appellant testified, the court ruled the admissions obtained in the statement were voluntarily and knowingly made. The statement was admitted into evidence before the jury, without objection, and a proper charge to the jury given. In pertinent part, the statement contained the following language: ". . . I told her [the victim] I was fixing to go. I picked up the gun you got from Chief Banks from under the bed me and my brother sleep in. I don't know what happened. All I know is, the gun went off. I then put the gun in the closet. I don't know when I started walking . . ." The agent further

testified when he asked appellant why he killed the victim, appellant replied, "I don't know." The question was repeated and appellant said it happened "because the victim knew something on him . . . he thought that she was talking about a married woman he had been dating . . ." The agent testified these two admissions were omitted from the written statement because appellant refused to sign it if reference to the admissions was put in it. Another state's witness, John Wilson, testified appellant had approached him the previous Sunday morning and asked for money because he needed "another drink of liquor to get something off my mind." Asked what this was, appellant replied, "I've got a son of a bitch I've got to kill." The witness thought appellant was teasing and told him he "wouldn't do anything about it." Appellant replied, "Watch me, I will be done killed me a son of a bitch Monday." Other evidence showed appellant refused his regular ride to work on the morning of the killing "around 7:30 or 8:00," asking his co-worker to pick him up around noon; that appellant was given a ride by two friends around 9:30 or 10 o'clock that morning, accepting two dollars to drive him to Madison. There a witness said he looked "worried." Appellant stayed in Madison overnight and returned to Rutledge the next morning where he was arrested.

2. We conclude appellant made a knowing and intelligent waiver of his right to counsel during pretrial interrogation, and that United States v. Satterfield, 558 F2d 655 (2nd Cir. 1976), citing Faretta v. California, 422 U. S. 806, 835 (1975), is not applicable under the circumstances of this case. It is clear from the transcript that appellant was a man of some age, though he testified "he didn't rightly know how old he was"; he was regularly employed. His conduct in the presence of the interviewing officers is consistent with the rule in Brady v. United States, 397 U. S. 742, 748 (1970), that appellant was "sufficiently aware of the relevant circumstances and likely consequences" of his acts, even though he wept on two occasions. He made no request for counsel following any of the warnings. He freely discussed the crime, though stopping short of actually confessing to it. He did not dispute the agent's testimony that he would not sign

the statement unless reference to his dating a married woman was omitted. He admitted to the court that he had put the "X's" at the bottom of the statement, though he remembered putting "only one down there," and that his statement was not the result of any coercion or promise of reward. The state carried its burden of showing the appellant knowingly and intelligently waived his right to counsel considering the experience, background and conduct of the accused.

3. The testimony of John Wilson was properly admitted to show state of mind, plan, intent or motive. *Johnson v. State,* 242 Ga. 822, 823 (251 SE2d 563) (1978); *Davis v. State,* 233 Ga. 638, 639 (212 SE2d 814) (1975).

*Judgment affirmed. All the Justices concur.*

SUBMITTED OCTOBER 5, 1979 — DECIDED OCTOBER 30, 1979.

*William A. Prior, Jr.,* for appellant.

*Joseph H. Briley, District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

