37950. WILLIAMS v. THE STATE.

PER CURIAM.
Appellant, Alvin Williams, was convicted of murder and received a life sentence. He appeals, raising eight enumerations of error. We affirm.

The evidence most favorable to the state can be summarized as follows: Appellant and a friend, Dafford Madison, were shooting dice outside the Fifth Inn Lounge in Lowndes County with the victim, Lewis Carter, Jr. Appellant and Carter got into an argument over money and Carter walked off. Madison told appellant that Carter was "going to get something" and gave appellant a pistol, which appellant placed in his back pocket. Appellant hurried after Carter, who stopped and turned around. Appellant reached in his back pocket for the gun. It went off while still in his pocket. Appellant got the gun out of his back pocket, pointed it at Carter's head and fired. Carter fell to the ground and lay there, not moving. Appellant stepped toward Carter and shot him twice more in the head. Appellant fled and was arrested two months later in Virginia.

1. In his first enumeration of error, appellant contends the trial court erred in not allowing him to ask certain questions of prospective jurors during voir dire. We find no error.

Three questions are involved here. The state objected to the form of the first one. The trial court sustained the objection but allowed appellant to ask substantially the same question in a slightly different form. The court did not abuse its discretion in so doing. *Waters v. State,* 248 Ga. 355 (3) (283 SE2d 238) (1981).

The second question was, "Do you think that places such as the Fifth Inn should be closed up and abolished?" The state objected to this question's relevancy. "The language of Code Ann. § 59-705 is broad, but the trial judge still retains the discretion to limit the examination to questions dealing directly with the specific case and to prohibit general questions such as the one asked here." *Hill v. State,* 221 Ga. 65, 69 (8) (142 SE2d 909) (1965).

The third question was, "If you were not personally agreeable with certain laws, would you attach any less importance to that law than you would to laws that you agree with?" The trial court did not err in refusing to allow this question. While a party is entitled to ask whether or not a juror would be able to follow the court's instructions, the court need not allow questions which ask jurors to weigh the relative merits of various laws. *Lundy v. State,* 130 Ga. App. 171 (2a) (202 SE2d 536) (1973).

2. Appellant contends the trial court erred in refusing to allow him to ask a state's witness, Herbert Perry, about the victim's tendency to get a pistol during crap games.

Proof of a victim's violent character becomes admissible "when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the defendant was honestly seeking to defend himself." *Black v. State,* 230 Ga. 614 (3) (198 SE2d 314) (1973). Such general character for violence cannot be established by proof of prior specific acts of violence,[1] but a defendant should be allowed to offer evidence that the victim had a reputation for a particular type of violence, for the reasons set out in *Henderson v. State,* 234 Ga. 827 (218 SE2d 612) (1975). Appellant contends that a tendency to get a pistol during crap games is a particular type of violence contemplated by *Henderson.* We need not answer that contention.

The trial court's ruling of which appellant complains occurred during the presentation of the state's case in chief, before appellant

---

[1] Prior altercations between the defendant and the victim may be admissible. *Milton v. State,* 245 Ga. 20 (262 SE2d 789) (1980).

had testified and before a prima facie case of self-defense had been made. After appellant testified, he was allowed to recall Perry and ask him about the victim's reputation for getting a gun. Since the trial court did not, in fact, refuse to allow appellant to ask his question relating to the deceased's reputation, this enumeration of error is meritless.

3. Appellant contends the trial court erred in refusing to allow him to impeach the same witness, Herbert Perry, by use of a prior contradictory statement. See Code Ann. § 38-1803.

When the trial court initially refused to allow appellant to ask Perry about the victim's reputation for getting a gun, appellant attempted to show that Perry had testified during the committal hearing that he had heard the victim "would go and get his weapon." Since this testimony did not contradict anything to which Perry had previously testified and since any testimony as to the victim's reputation was at that time premature, the court did not err in refusing to allow the question. We note that when Perry was recalled after appellant testified, Perry was again questioned about his committal hearing testimony and the question and answer were allowed. This enumeration of error is patently meritless.

4. In his fourth enumeration of error, appellant contends the trial court erred in refusing to give his requested charges on both felony and misdemeanor grade involuntary manslaughter. Appellant testified he was trying to shoot over the victim's head to scare him but the gun must have come too low and hit him. Appellant claimed he was in a daze and did not remember shooting the victim two more times. This testimony, he claims, injected both theories of involuntary manslaughter and therefore the court should have charged them. We disagree.

Code Ann. § 26-1103 (a) provides: "A person commits involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so, by the commission of an unlawful act other than a felony." Appellant admitted deliberately firing his gun in the direction of the victim to scare him. Using a deadly weapon to commit an act which places another in reasonable apprehension of immediately receiving a violent injury amounts to an aggravated assault, absent justification. Code Ann. §§ 26-1301, 26-1302, 26-901. The act testified to by appellant was either justified as an act of self-defense or constituted a felony.[2] In either event, death was not caused by an

---

[2] The trial court charged the jury on self-defense and justification. These theories were necessarily rejected by the jury, who found appellant guilty of murder.

unlawful act other than a felony and the trial court correctly refused to charge the theory of involuntary manslaughter contained in Code Ann. § 26-1103 (a).

Code Ann. § 26-1103 (b) provides: "A person commits involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being, without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm." Appellant contends this section is applicable because the jury could have found that he was acting in self-defense (the lawful act) but used excessive force (the unlawful manner).

There is no evidence in this case that the gun accidentally discharged. Thus, the applicability of Code Ann. § 26-1103 (b) is controlled by *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980), where this court held: "A person who causes the death of another human being by the use of a gun allegedly in self-defense will not be heard to assert that although he or she used excessive force, death was not intended and the act was lawful." Id. at 94. The trial court did not err in refusing to charge the law as to misdemeanor grade involuntary manslaughter.

5. Upon request by the jury, the court recharged on murder and voluntary manslaughter. Appellant claims the jury also asked to be recharged on the principles of self-defense and justification and the trial court erred in failing to do so.

The relevant portions of the transcript show the following: After deliberating for awhile, the jury returned to ask the court to explain to them again what the possible verdicts were. The court told them they could find three possible verdicts: murder, voluntary manslaughter, or not guilty. The court asked the jury if that answered their question. It did not. While the ensuing colloquy is somewhat confusing, it is clear the jury wanted to be recharged at least on murder and voluntary manslaughter. The court told them he would recharge the definitions of murder and voluntary manslaughter and when he finished that, if they wanted him to repeat any of the other instructions, he would be glad to do so. After the recharge, the jury made no additional requests. Contrary to appellant's contentions, the trial court fully complied with the jury's request. We find no error.

6. Appellant contends in his seventh enumeration of error that the court, having recharged murder and voluntary manslaughter, should have recharged the principles of self-defense and justification even if the jury did not request such additional instruction. We must disagree. " 'Where the jury requests further instructions upon a particular phase of the case, the court in his discretion may recharge

them in full, or only upon the point or points requested.' [Cits.]" *Shouse v. State,* 231 Ga. 716 (13) (203 SE2d 537) (1974). " '[T]he court is not bound to repeat all the law favorable to the accused.' [Cits.]" *Davis v. State,* 140 Ga. App. 890 (3) (232 SE2d 164) (1977). We note the court included in its recharge an instruction that the jury would not be entitled to convict the defendant unless convinced of his guilt beyond a reasonable doubt and the court reinstructed the jury as to the form of their verdict should they find the defendant not guilty. We find no abuse of discretion and no error.

7. In his final enumeration of error, appellant contends the trial court erred in denying his motion for a new trial on the grounds of newly discovered evidence. Appellant claims that, subsequent to his conviction, he discovered three new witnesses to the shooting: Harry "Skeeter" Frazier, Isaiah "Bubba" McDonald, and Eddie Edwards. The evidence presented by appellant in support of his motion shows that Bubba would testify that appellant shot the victim when the latter put his hand toward his rear pocket. Skeeter would testify that the victim had walked away from the dice game with his hands in his back pockets. When appellant called to him, the victim turned around and walked toward appellant. Appellant then shot the victim, whose hands were still in his pockets. Edwards would testify that he wasn't looking in appellant's direction until after the first shot (which went off in appellant's back pocket). When Edwards turned to look, he saw the victim advancing toward appellant with his hands in his pockets, and he saw appellant shoot the victim.

Appellant testified at the hearing on the motion for new trial that, although he remembered that Skeeter had been at the scene, he didn't know Skeeter's real name or how to locate him. He couldn't remember if Bubba had been there or not. Appellant's attorney stated that he had interviewed Edwards prior to trial, but only after appellant's conviction did Edwards come forward with his present account of the events.

*Emmett v. State,* 232 Ga. 110 (205 SE2d 231) (1974) sets forth six requirements which must be met to obtain a new trial on the grounds of newly discovered evidence. Only two need concern us: Appellant must show "(2) that it was not owing to the want of due diligence that he did not acquire [the evidence] sooner" and "(3) that it is so material that it would probably produce a different verdict." Id. at 117.

We conclude appellant has not shown that Harry "Skeeter" Frazier's testimony could not have been acquired by the exercise of due diligence. Not only did Edwards, whom appellant's attorney interviewed prior to trial, know Skeeter's real name, so did Herbert Perry who testified during the presentation of the state's case that

Skeeter had been present at the shooting and his real name was Harry Frazier.

We further conclude appellant has not shown that the testimony of Isaiah "Bubba" McDonald could not have been acquired by the exercise of due diligence. Appellant's testimony during the motion for new trial that he did not remember whether Bubba was present at the shooting is contradicted by his testimony during the trial that Bubba was present.

Finally, we conclude that the testimony of none of the three new witnesses is so material that it would probably produce a different verdict if a new trial were granted. There was no evidence presented during the trial or afterwards that the victim had a weapon in his back pocket or elsewhere on his person. The most that appellant's evidence showed is that the victim was going to get a weapon, not that he already had one. Four witnesses testified during the trial that they saw appellant shoot the victim in the head twice, after the victim was already lying on the ground, motionless. That testimony has never been disputed. Appellant has shown nothing to warrant giving him a new trial, and we decline to do so.

*Judgment affirmed. All the Justices concur, except Weltner, J., not participating.*

DECIDED FEBRUARY 10, 1982.

*Langdale, Vallotton & Hickman, E. Cameron Hickman, Joseph E. Vallotton,* for appellant.

*H. Lamar Cole, District Attorney, Fred R. Thompson, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.