## 42892. CHASTAIN v. THE STATE.
### (342 SE2d 678)

GREGORY, Justice.

David Chastain was convicted of murder and sentenced to life imprisonment.[1] He was also convicted of two counts of tampering with evidence. We affirm the murder conviction and one count of tampering with evidence, but reverse the conviction of the other tampering charge.

Chastain, who is blind, lived at a Bainbridge boarding house. On January 25, 1985, he went out drinking with a fellow boarder, David Elrod, who was not blind. Upon their return at around 11:30 p.m., Chastain and Elrod argued on the front steps of the boarding house. Several other boarders were awakened and heard Chastain threaten to kill Elrod. Soon after, Chastain and Elrod joined fellow boarder Bill Morgan, who is also blind, in the living room to watch and listen to television. Morgan said he and Chastain sat on a sofa while Elrod was seated in a chair near the television. Chastain got up and walked back and forth to his bedroom several times during the night, Morgan said. At around 4:30 a.m., Morgan asked Elrod if he had stolen any money from him. Elrod said no. Morgan then heard a gunshot. Morgan got up and met Chastain in the hallway. Chastain asked Morgan if he should run or surrender to police. Morgan advised him to surrender.

Chastain then walked to a nearby convenience store. He told the clerk he had shot somebody and asked her to call the police. Sgt. Carl Davis was the first police officer to arrive. Chastain told Davis he had shot a man in the back of the head. When Officer Carrie Jones arrived to take custody of Chastain, he told her he had shot a man with his own gun, but that he had not intended to kill him. An intoximeter test after his arrest revealed Chastain's blood alcohol content to be .25 percent.

When police arrived at the boarding house, they found Elrod dead and seated upright in the living room chair with his legs crossed and a knife in his hand. He had a gunshot wound in the back of his head. None of the furniture was in disarray. A police search uncovered a .38 caliber revolver under Morgan's mattress. At trial, a State Crime Laboratory examiner testified the bullet that killed Elrod was fired from the revolver. A pathologist testified that gunpowder residue on Elrod's head indicated a muzzle-to-target distance of less than one

---

[1] The crimes were committed and the defendant was arrested on January 26, 1985. The defendant was indicted on April 2, 1985. A Decatur County jury returned verdicts of guilty on May 13, 1985. A motion for new trial was filed on June 10, 1985, and denied by the trial court on August 30, 1985. Notice of appeal was filed in this court on September 25, 1985. The transcript of the proceedings was certified on November 4, 1985, and docketed on November 7, 1985. The case was submitted for decision on March 7, 1986.

inch. The autopsy also revealed Elrod had a blood alcohol content of .29 percent.

1. Chastain contends the trial court erred in not allowing his counsel to ask prospective jurors on voir dire if any of them would have any reluctance in returning a not guilty verdict when they had a reasonable doubt as to the defendant's guilt.

Questions dealing with burden of proof, reasonable doubt and the presumption of innocence are technical legal questions which are properly the subjects of instruction by the court at the end of trial. See *Baxter v. State*, 254 Ga. 538 (7) (331 SE2d 561) (1985); *High v. State*, 247 Ga. 289 (6) (276 SE2d 5) (1981); *Stack v. State*, 234 Ga. 19 (2) (214 SE2d 514) (1975). Therefore, the trial court did not err in sustaining the State's objection and prohibiting use of the question.

Chastain nonetheless claims the question was necessary to determine any inclination, leaning or bias of prospective jurors, as allowed for in OCGA § 15-12-133. This statute provides: "In the [voir dire] examination, the counsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action of the counsel of parties thereto, and the religious, social and fraternal connection of the juror." While the language of the statute is broad, the trial judge retains the discretion to limit the examination to questions dealing directly with the specific case and to prohibit general questions. *Williams v. State*, 249 Ga. 6 (1) (287 SE2d 31) (1982); *Hill v. State*, 221 Ga. 65 (142 SE2d 909) (1965). Even assuming the question here was not of a technical legal nature, the trial judge was within his discretion to prohibit its scope.

2. Chastain contends the trial court erred in allowing a witness to remain after the rule of sequestration had been invoked, and to testify after hearing the testimony of other witnesses.

OCGA § 24-9-61 provides: "In all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude a witness." The rule as expressed in the statute plainly allows latitude in its application. Furthermore, the trial court is vested with the discretion to make exceptions to this rule; and unless the discretion is abused, the decision will not be reversed on appeal. *Davis v. State*, 242 Ga. 901 (3) (252 SE2d 443) (1979).

One long standing exception to the rule exists in criminal cases for the prosecutor, that is, the one who signs the indictment bringing

the charges. *Roach v. State*, 221 Ga. 783 (7) (147 SE2d 299) (1966); *Hudgins v. State*, 13 Ga. App. 489 (2) (79 SE 367) (1913); *Tift v. State*, 133 Ga. App. 455 (1) (211 SE2d 409) (1974). The prosecutor may testify as a witness after other witnesses for the State have testified. *Roach*, supra at 787, *Swain v. State*, 151 Ga. 375 (107 SE 40) (1921).

The witness in question here was the Decatur County Sheriff's investigator who signed the indictment as prosecutor charging Chastain with murder and tampering with the evidence. Therefore, the trial court did not abuse its discretion in allowing the investigator to remain in the courtroom and testify as the State's final witness.

3. Chastain contends the trial court erred in failing to charge the jury on voluntary manslaughter in that facts of the case demanded the charge.

However, Chastain made no request for the charge. While a trial judge may in his discretion charge on a lesser included crime of that charged in the indictment, failure to do so without a written request is not error. *State v. Stonaker*, 236 Ga. 1, 2 (222 SE2d 354) (1976).

4. The State charged Chastain with two counts of tampering with evidence in violation of OCGA § 16-10-94 (a), which provides: "A person commits the offense of tampering with evidence when, with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence." Count II of the indictment alleges Chastain planted false evidence by placing a knife in the victim's hand. Count III alleges Chastain concealed the murder weapon under a mattress with intent to obstruct the prosecution.

Applying the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we find a rational trier of fact could have found Chastain guilty beyond a reasonable doubt of concealing the murder weapon with intent to obstruct the prosecution. A ballistics expert testified the .38 caliber revolver found hidden under the mattress fired the bullet that killed Elrod. Chastain admitted to four different persons that he shot Elrod. A jury could reasonably infer that Chastain hid the weapon in the interval between the shooting and contact with Morgan in the boarding house hallway. We affirm the conviction under Count III.

However, other than a photograph of the deceased victim clutching a knife, the State produced no evidence showing Chastain placed the knife there in an effort to plant false evidence. No fingerprints were submitted into evidence, and, in fact, the actual knife was never introduced. It appears any inferences as to how the knife reached the victim's hand were mere speculation. Thus, the evidence as to Count

II of the indictment fails to meet the *Jackson v. Virginia* test. We reverse the conviction under Count II.

5. We find a review of all of the evidence adduced at trial in a light most favorable to the jury's verdict as to Count I of the indictment shows that a rational trier of fact could have found Chastain guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, supra. We affirm the conviction under Count I.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Smith and Weltner, JJ., who dissent.*

SMITH, Justice, dissenting.

The majority's affirmance of the appellant's conviction for tampering with evidence by hiding a pistol requires a finding that a juror could conclude beyond a reasonable doubt that the appellant knowingly concealed the murder weapon with the intent to obstruct the state's case against him. This count of tampering with the evidence would be a close call even under a preponderance of the evidence standard. The court should reverse both, not just one, of the petty, trivial convictions for tampering with evidence.

The lead investigator in the case for the Bainbridge Police Department testified that no obstruction of the investigation occurred as a result of the appellant placing the pistol under the mattress. Neither the state nor the appellant presented evidence as to the normal resting place of the pistol. Evidence introduced as to the ownership of the pistol proved ambiguous, as the phrase "his own gun" did not clearly apply to either the appellant or the victim. Finally, the appellant, almost immediately after the shooting, had the police summoned, admitted the shooting to them, and specifically stated that he had shot the victim with a pistol.

The majority states, "The jury could reasonably infer that Chastain hid the weapon in the interval between the shooting and contact with Morgan in the boarding house hallway." The jury could just as reasonably infer that Chastain simply placed the pistol back in a place where it might normally be kept. For examples of storage, not concealment, of weapons under mattresses or beds, see *Raines v. State*, 247 Ga. 504 (277 SE2d 47) (1981); *Thomas v. State*, 244 Ga. 608, 609 (261 SE2d 389) (1979); *Brown v. State*, 233 Ga. 171 (210 SE2d 706) (1974); *Maloof v. State*, 145 Ga. App. 408, 409 (243 SE2d 634) (1978); *Mitchell v. State*, 134 Ga. App. 376, 379 (214 SE2d 593) (1975); *Gainey v. State*, 132 Ga. App. 870 (209 SE2d 687) (1974); *Pennamon v. State*, 110 Ga. App. 475, 476 (138 SE2d 890) (1964). Where, as here, the evidence regarding the crime of tampering with evidence is undisputed, and is every bit as indicative of innocence as it is of guilt, the defendant's conviction should be reversed.

As for the appellant's intent to obstruct the investigation by hid-

ing the pistol, the possibility that he did not intend to conceal the pistol raises the possibility that he did not intend to hinder the police. In addition, his immediate call to the police and his subsequent admission of the shooting and description of the weapon that he used support the conclusion that he did not intend to obstruct the prosecution of the crime that he reported. The only evidence of criminal intent involved here is an inference drawn from ambiguous facts. Clearly, no juror could find, beyond a reasonable doubt, that the appellant intended to obstruct the prosecution in his actions following the victim's death.

Finally, the state should have to show, under this code section, that the defendant created at least *some* degree of obstruction of prosecution of a case for his conviction to stand. Here, the state's lead investigator testified that no obstruction occurred. The appellant actually expedited the prosecution by calling the police, by admitting his role in the homicide to the police, and by describing the death-dealing weapon. The prosecution and conviction for tampering with evidence under these facts is really piling it on.

I think the legislature never intended for this statute to apply to the person charged with a crime. At least it should merge with the more serious crime charged, murder here. To so hold simply means that almost anyone charged with a crime could also be charged with tampering with evidence or obstructing the prosecution of a case. This would be true in every case unless the person revealed every minute detail of the transaction. To apply this statute in the way the majority has is absurd.

I am authorized to state that Justice Weltner joins in this dissent.

DECIDED MAY 9, 1986.

*Lambert, Floyd & Conger, George C. Floyd,* for appellant.
*J. Brown Moseley, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Staff Assistant Attorney General,* for appellee.