## A05A0819. BECK v. THE STATE.
(615 SE2d 168)

ANDREWS, Presiding Judge.

Clifford Lamar Beck, Jr. admitted that he shot and killed Robert Turlington, but claimed that he justifiably did so while acting in self-defense. A jury found Beck not guilty of malice murder and two counts of felony murder, but guilty of aggravated assault. For the following reasons, we affirm the judgment of conviction.

1. Contrary to Beck's claim, we find that the evidence was sufficient to support the guilty verdict on the charge of aggravated assault. Although Beck argues that the not guilty verdicts on the

---

murder charges show that the jury must have found he justifiably acted in self-defense, he concedes that, even if the not guilty verdicts were inconsistent with the guilty verdict, there is no rule against this type of inconsistent verdict in criminal cases. *Kimble v. State,* 236 Ga. App. 391, 392-395 (512 SE2d 306) (1999). Accordingly, the sole issue is whether the evidence, viewed in favor of the conviction, was sufficient for the jury to find beyond a reasonable doubt that Beck was guilty of the charged aggravated assault. *White v. State,* 268 Ga. 28, 29 (486 SE2d 338) (1997).

The State charged that Beck committed the offense of aggravated assault by unlawfully assaulting the person of Robert Turlington with a pistol, a deadly weapon. OCGA §§ 16-5-20 (a); 16-5-21 (a) (2); *Arthur v. State,* 275 Ga. 790, 791 (573 SE2d 44) (2002). Under the instructions given by the trial court to the jury, the State could prove this charge by evidence that Turlington reasonably apprehended an immediate violent injury when Beck pointed the pistol at him. OCGA §§ 16-5-20 (a) (2); 16-5-21 (a) (2). Beck's defense to the aggravated assault charge was that he justifiably pointed the pistol at Turlington in self-defense, so the State had the additional burden of disproving this defense beyond a reasonable doubt. *Williams v. State,* 249 Ga. 6, 8 (287 SE2d 31) (1982); *Andrews v. State,* 267 Ga. 473, 474 (480 SE2d 29) (1997).

Beck did not testify at the trial, and, other than Beck and Turlington, there were no witnesses who saw or heard what happened between the two men at the time of the shooting. Viewed in favor of the verdict, evidence showed that, on the night of the shooting, Beck's wife told him that she had just been threatened by a black male with a knife or a gun in the front yard of their residence. According to Beck's statement to police, Beck immediately walked to his front door "and [saw] the guy go around the picket fence" that separated his yard from his neighbor's yard. Beck told police that he then went outside with a pistol to investigate, walked around the fence to his neighbor's yard, and saw Turlington sitting in front of his neighbor's residence drinking a beer. Beck recognized Turlington as the white male who rented a room from his neighbor. Beck said he approached Turlington with pistol in hand and asked him if he had "seen anybody that had been over in my yard threatening my wife." Beck stated that Turlington stood up holding a knife in his hand, said "I see what you have in your hand," referring to Beck's pistol, and then started to move toward Beck while threatening to cut his head off with the knife or to stab him. According to Beck, he kept backing away from Turlington, who appeared to be incoherent, and warned him "a dozen times to stay away, I have a gun, I will use it." Beck said that when Turlington continued to move toward him and lunged at him with the knife, he shot Turlington twice in self-defense.

Beck's neighbor testified that he arrived at his residence after the shooting occurred and saw his renter, Turlington, lying on the ground in the yard, apparently dead. He said Beck approached him saying that "[Y]ou have just got to tell them that he is crazy," and that "He was trying to kill my wife." After the neighbor called 911, police arrived and found Turlington dead, lying on his back holding a knife in his hand, with two gunshot wounds, one to his upper chest and another to his lower chest/upper abdomen area. A Georgia Bureau of Investigation (GBI) agent examined the scene of the shooting and was qualified at trial as an expert in crime scene investigation. Based on blood patterns and shell casings found at the scene, the agent surmised that the first shot hit Turlington in the lower chest/upper abdomen area and left a blood trail showing that Turlington moved slowly to a point about 12 feet from the first shot. According to the agent, Turlington was then hit with the second shot in the upper chest area, which left a spurting type blood trail to the point where the body was found. A medical examiner from the GBI, who performed an autopsy on Turlington's body and was qualified at trial as an expert in forensic pathology, testified that the first shot which hit Turlington inflicted an incapacitating injury.

Based on the evidence, the jury could have found that Beck's first shot incapacitated Turlington, who then slowly moved away a distance of 12 feet before Beck shot him again. Even if the jury found that Beck fired the first shot in self-defense to protect himself from Turlington's lunge with the knife, there was evidence from which the jury could have concluded that Turlington was no longer a threat after the first shot, and that the retreating Turlington reasonably apprehended an immediate violent injury when Beck pointed the pistol at him for the second shot. Accordingly, the jury could have found beyond a reasonable doubt that Beck did not act in self-defense after the first shot and that he was guilty of the charged aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Beck contends that the trial court erred by excluding evidence of prior violent acts by Turlington against third persons.

The record shows that the defense failed to provide the State with notice ten days prior to trial of its intention to introduce this evidence as required by Uniform Superior Court Rules 31.1 and 31.6. Moreover, to show that the violent acts evidence was admissible, the defense was required not only to produce competent evidence of the prior violent acts, but was also required to show a prima facie claim of justification by producing evidence that Turlington was the aggressor, that Turlington assaulted Beck, and that Beck was honestly trying to defend himself. *Harrison v. State*, 268 Ga. 574, 577 (492 SE2d 218) (1997); *Shields v. State*, 272 Ga. 32, 34 (526 SE2d 845)

(2000). When the trial court held a hearing immediately prior to commencement of the trial to consider the defense's intention to introduce prior violent acts evidence, defense counsel stated that "it is going to be our contention that Mr. Turlington attacked Mr. Beck and Mr. Beck was forced to defend himself at that time," but counsel made no attempt to introduce evidence at the hearing to establish a prima facie case of justification. At the conclusion of the hearing, the trial court excluded the violent acts evidence. Because notice of the evidence was not timely and no prima facie case of justification was established at the hearing, we conclude that the trial court did not err by excluding the evidence at that time. *Harrison*, 268 Ga. at 577.

3. Beck claims the trial court erroneously recharged the jury on aggravated assault. We find no error.

The trial court initially charged the jury that the defendant was charged with aggravated assault with a deadly weapon and that

> if the pointing of a firearm places the victim in reasonable apprehension of receiving an immediate violent injury the crime of aggravated assault has occurred. It makes no difference whether the weapon was loaded or could, in fact, be fired.

OCGA §§ 16-5-20 (a) (2); 16-5-21 (a) (2). Beck does not claim that this jury charge was erroneous. After the jurors began deliberations, they sent a note to the trial court asking, "What is the definition of aggravated assault?" When the trial court stated its intention to recharge the jury with the same charge previously given on aggravated assault, defense counsel stated, "We would object to that." The trial court then asked defense counsel, "Well, what do you want me to do?" and defense counsel responded, "I don't want you to recharge them at all right now." The trial court then asked, "Is that your objection that you don't want me to recharge them as to aggravated assault?" and defense counsel responded, "Not now." The trial court overruled the objection and recharged the jurors by reminding them to consider the other elements of law previously charged, and by giving the same charge previously given on aggravated assault.

Beck contends that the recharge was erroneous because the trial court did not instruct the jury that, in order to convict him of aggravated assault, they must find that he "unlawfully" pointed the pistol at Turlington. By failing to add "unlawfully" to the recharge, Beck contends the trial court, in effect, eliminated his justification defense. First, the trial court stated its proposed recharge, directly inquired if there were objections to the recharge, and defense counsel stated his objection without reserving the right to raise additional objections. After the trial court subsequently gave the same recharge

it proposed, Beck was limited to the only objection made in the trial court and waived the objection he now makes on appeal. *Lewis v. State*, 215 Ga. App. 161, 163-164 (450 SE2d 448) (1994). Second, even if this objection had been preserved for appellate review, it has no merit. When it recharged on aggravated assault, the trial court reminded the jury to consider all the elements of law it had previously charged, which included the court's previous charge on justification and self-defense. Moreover, even where justification and self-defense are issues,

> [w]here the jury requests further instructions upon a particular phase of the case, the court in his discretion may recharge them in full, or only upon the point or points requested. The court is not bound to repeat all the law favorable to the accused.

(Citations and punctuation omitted.) *Williams*, 249 Ga. at 9-10.
*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MAY 20, 2005.

*Joel N. Shiver, James C. Bonner, Jr.*, for appellant.
*Robert W. Lavender, District Attorney, David C. Walker, Assistant District Attorney*, for appellee.