### A09A2057. DAVIS v. THE STATE.

(687 SE2d 854)

MIKELL, Judge.

Dock Heard Davis, an attorney, was indicted on charges of driving under the influence of alcohol to the extent that he was a less safe driver ("DUI less safe"), OCGA § 40-6-391 (a) (1) (Count 1); failure to maintain lane, OCGA § 40-6-48 (Count 2); violating the open container law, OCGA § 40-6-253 (Count 3); violating a duty upon striking a fixed object, OCGA § 40-6-272 (Count 4); leaving the scene of an accident, OCGA § 40-6-270 (Count 5); and reckless driving, OCGA § 40-6-390 (Count 6). At trial, the court directed a verdict of acquittal on Count 5, and the jury found Davis guilty on all remaining counts except Count 3. The trial court sentenced Davis to ten days in jail plus a total of twenty-four months on probation. Davis, who represented himself at trial and proceeds pro se on appeal, argues that the trial court erred by ordering him to proceed to trial and represent himself, by refusing to give his requested charge on accident, and by excluding testimony that a sheriff's deputy twice "planted drugs" on Davis's clients. Finally, Davis contends that the evidence is insufficient to support his DUI conviction. Finding no error, we affirm.

1. We first address Davis's challenge to the sufficiency of the evidence. In so doing, we view the evidence in the light most favorable to the jury's verdict, and Davis no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find Davis guilty of the charged offense beyond a reasonable doubt.[2] "As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, the verdict will be upheld."[3]

The offense of DUI less safe requires proof of three elements: "(1) driving, (2) under the influence of alcohol, (3) to the extent that

---

[1] *Jones v. State*, 273 Ga. App. 192 (1) (614 SE2d 820) (2005).

[2] Id. at 193 (1).

[3] (Punctuation and footnote omitted.) *Yglesia v. State*, 288 Ga. App. 217, 218 (653 SE2d 823) (2007).

it is less safe for the person to drive."[4] Davis argues that his DUI conviction cannot be sustained because there was no evidence that his driving ability was impaired by alcohol. We disagree.

Construed in favor of the verdict, the evidence shows that on Christmas Day, 2007, Heard County deputy sheriffs Jeremy Lipham and Oscar Lattimor each received a dispatch call at 6:28 p.m. indicating that power lines were down on Frolona Road in Franklin. They responded to the scene in separate vehicles. When Lattimor arrived, he observed a utility pole broken in two places. The top end of the pole was lying in the road along with numerous electrical wires. Lipham testified that the utility pole was located 26 feet from the edge of the road. Lipham noticed a briefcase in the woods and determined that it belonged to Davis.

Lattimor drove to Davis's home, which was located on Frolona Road, and observed a pickup truck in the driveway. The truck had extensive damage to the passenger side, consistent with hitting a utility pole. Davis, who was not at home, arrived a few minutes later in a vehicle with his son and a family friend. Lattimor testified that Davis stumbled when he exited the vehicle and put candy or peppermint in his mouth. When asked about the accident, Davis stated that he had just left his law office, was distracted by deer, veered off the road, and struck the pole. According to Lattimor, Davis also stated that the road was "rotten [sic]." Lattimor detected a faint odor of alcohol on Davis; his speech was slurred; he stumbled a few times; he was rocking as he spoke; his eyes were "glazy"; and his complexion was "pasty."

Lipham, who arrived at Davis's home after Lattimor, testified that Davis seemed confused; his speech was slow; he swayed while walking; and his face was flushed and pale. According to Lipham, Davis gave conflicting statements about the location of the deer that allegedly distracted him. Davis denied drinking alcohol that day and stated that the only thing he had to drink was a glass of water at 2:00 p.m. With Davis's consent, the deputies photographed the interior of the truck. When Lipham opened the door, he smelled alcohol, which was emanating from the liquid in a small glass in the driver's side cupholder. At that point, Davis stated that the glass may have belonged to his son. Photographs taken the next day at the scene of the accident revealed that the road was in good condition.

The accident occurred at 6:15 p.m., and Davis took an independent blood test at approximately 8:55 p.m. The parties stipulated to the admissibility of the results, which were 0.053 grams per 100

---

[4] (Punctuation and footnote omitted.) *Hoffman v. State*, 275 Ga. App. 356, 357 (1) (620 SE2d 598) (2005).

milliliters. Frank Wayne Lewallen, a forensic toxicologist, testified that at 6:15 p.m., Davis's blood alcohol level would have been 0.078 assuming a low metabolic rate, 0.09 for an average rate, or 0.115 at the "high end."

Lipham, who worked as an EMT prior to becoming a law enforcement officer, testified that he had observed over 100 persons under the influence, and that based on his training and experience, as well as his observation of the accident scene, Davis's manifestations when arrested were consistent with a person who was under the influence of alcohol, and Davis was under the influence of alcohol to the extent that he was a less safe driver. Lattimor similarly opined that, based on his experience and observations, Davis was under the influence of alcohol to the extent that he was a less safe driver when he struck the pole.

Davis testified that he drank two to three glasses of wine with Christmas dinner, which ended at approximately 2:30 p.m. According to Davis, he drove to his law office some time after dinner, left the office around 6:15 p.m., and saw deer as he was driving down Frolona Road. Davis testified that when he took his eyes off the road, his two right wheels left the pavement and spun out of control because the soil was soft and "mushy." At that point, the vehicle hit the electrical pole.

"In a less safe case, the [s]tate must prove that the defendant had impaired driving ability as a result of drinking alcohol."[5] DUI may be proved solely by circumstantial evidence.[6] Where, as here, "there is evidence that the defendant has been drinking, the manner of his driving may be considered on the question of whether he has been affected by alcohol to the extent that he is less safe to drive."[7] In the case at bar, Davis's drinking was established by evidence that his blood alcohol level was between 0.078 and 0.115 at the time of the incident. As to the manner of his driving, Davis drove his vehicle off the roadway, spun out of control, and struck an electrical pole that was located 26 feet from the edge of the asphalt. Davis drove with cruise control on although it was raining. Evidence indicated that the road was in good condition, despite Davis's testimony to the contrary. The manner in which Davis drove "suggest[s] the negative influence of intoxication on the operation of the vehicle."[8] Additionally, this evidence supports his conviction of reckless driving.[9]

---

[5] (Punctuation and footnote omitted.) *State v. Ellison*, 271 Ga. App. 898, 902 (3) (b) (611 SE2d 129) (2005).

[6] *Pecina v. State*, 274 Ga. 416, 419 (2) (554 SE2d 167) (2001).

[7] (Citation omitted.) Id.

[8] (Citation, punctuation and footnote omitted.) *Jones*, supra (defendant pulled out of a parking lot without stopping and rear-ended a vehicle stopped at a traffic light).

[9] See OCGA § 40-6-390 (a); *Lesh v. State*, 259 Ga. App. 325, 327 (577 SE2d 4) (2003).

Furthermore, the deputies testified to Davis's slurred speech, stumbling gait, "glazy" eyes and "pasty" complexion; one of the deputies smelled alcohol coming from his person and vehicle. The experienced officers testified that, in their opinion, Davis was under the influence to the extent that it was less safe for him to drive. "A police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether. [he] was under the influence to the extent it made him less safe to drive."[10] The evidence was sufficient for any rational trier of fact to find Davis guilty of DUI less safe beyond a reasonable doubt.[11]

2. Davis next contends that the trial court erred by refusing to give his requested charge on misfortune or accident. We disagree. The defense of accident applies "where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."[12] The defense does not apply to the charges of DUI, reckless driving,[13] or failure to maintain lane, because those offenses concern the defendant's condition while driving and not to any "traffic mishap that occurred while he was operating the motor vehicle."[14] Thus, Davis was not entitled to a charge that the accident was unavoidable. Moreover, "accident is an affirmative defense. An affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it."[15] Because Davis did not admit to committing any act which constitutes the offenses with which he was charged, he was not entitled to an instruction on accident.[16]

3. Davis argues that the trial court erred in refusing to allow him to testify that he had twice proved that the Heard County sheriff's office "planted drugs" on his clients. Davis had contended that he was being prosecuted for DUI in retaliation for his defense of persons accused of certain crimes. While cross-examining Lattimor, Davis attempted to show that Lattimor did not decide to charge him with DUI until after a lengthy conversation with the chief deputy. Davis also suggested in his own testimony that one of the deputies had "atomized" a strong-smelling substance into a glass in his car. When

---

[10] (Citations omitted.) *Lewis v. State*, 214 Ga. App. 830, 832 (1) (449 SE2d 535) (1994); accord *Brent v. State*, 270 Ga. 160, 162-163 (3) (510 SE2d 14) (1998); *Waits v. State*, 232 Ga. App. 357, 358 (1) (501 SE2d 870) (1998).

[11] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Pecina*, supra; *Stone v. State*, 248 Ga. App. 190, 191-192 (1) (546 SE2d 787) (2000).

[12] OCGA § 16-2-2.

[13] *Rutland v. State*, 282 Ga. App. 728, 729-730 (1) (639 SE2d 628) (2006) (DUI and reckless driving); *Stefanell v. State*, 263 Ga. App. 412, 413 (587 SE2d 868) (2003) (DUI and failure to maintain lane).

[14] (Footnote omitted.) *Rutland*, supra at 729 (1).

[15] (Punctuation omitted.) *Mangrum v. State*, 285 Ga. 676, 680 (6) (681 SE2d 130) (2009), citing *Rutland*, supra at 730 (1).

[16] *Mangrum*, supra; *Rutland*, supra; *Stefanell*, supra.

Davis sought to testify that other deputies had "planted drugs" on his clients, the state objected on relevancy grounds. The trial court inquired whether the prior incidents had involved the deputies who testified against him. Davis replied that "they were deputies he [sic] worked with." Davis made no offer of proof, and the trial court excluded the testimony as irrelevant. The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.[17] On appeal, Davis argues that the trial court erred in excluding evidence of the potential bias of the sheriff's office. We disagree. "Evidence which does not in any reasonable degree tend to establish the probability of the issues of fact in controversy is irrelevant and inadmissible."[18] The trial court did not abuse its discretion in excluding testimony that deputies who were unrelated to the case at bar allegedly planted drugs on Davis's clients, as such testimony would not shed light in any reasonable degree on any fact in controversy.

4. Finally, Davis argues that the trial court reversibly erred in denying his pro se motion for new trial for the reason that the court failed to warn him of the dangers of self-representation. We disagree.

Although a criminal defendant has a Sixth Amendment right to assistance of counsel at trial, the defendant also has the constitutional right to represent himself, as long as he voluntarily, knowingly, and intelligently elects to waive the right to counsel.[19] To establish a valid waiver, "the trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will [show] that he knows what he is doing and his choice is made with eyes open."[20] In this regard, our Supreme Court has made clear that "the record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver."[21]

Neither this Court nor the Supreme Court of Georgia has addressed the issue of whether the trial court must warn a defendant who is an attorney of the dangers and disadvantages of self-

---

[17] *Holmes v. State*, 275 Ga. 853, 855 (5) (572 SE2d 569) (2002).

[18] (Citation and punctuation omitted.) *Craig v. State*, 205 Ga. App. 691, 692 (1) (423 SE2d 417) (1992) (court did not abuse discretion in excluding evidence that defendant had spurned social advances by the officer who operated intoximeter machine).

[19] *Faretta v. California*, 422 U. S. 806, 807, 835 (V) (95 SC 2525, 45 LE2d 562) (1975); *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990); *Clarke v. Zant*, 247 Ga. 194, 195 (275 SE2d 49) (1981); Ga. Const. of 1983, Art. I, Sec. I, Par. XII.

[20] (Citations and punctuation omitted.) *Lamar v. State*, 278 Ga. 150, 152 (1) (b) (598 SE2d 488) (2004).

[21] (Citation and punctuation omitted.) *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009); *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998).

representation in order to effect a valid waiver of the right to counsel. Courts in other jurisdictions which have considered the question have held that although an attorney/defendant must voluntarily, knowingly, and intelligently waive the right to counsel, the trial court is not required to use any specific language in this regard when conducting a waiver-of-counsel colloquy.[22] It has been stated that "the appropriate inquiry is what the defendant understood — not what the court said."[23]

Here, the record shows that Davis initially was represented by attorney Steven Fanning. Shortly before trial, however, Davis discharged Fanning, and Davis filed an entry of appearance, listing himself as counsel and Michael Arrington as co-counsel. Prior to trial, the prosecutor asked the trial court to make a statement on the record concerning the dangers of self-representation. The following colloquy ensued:

> THE COURT: All right. Well, when I have a case that involves a pro se defendant, obviously, I generally engage in some colloquy on the record, and I think I'm obligated to, to ensure that the defendant understands the pitfalls of self-representation. I generally encourage defendants who indicate they want to represent themselves to consider either retaining or asking for appointed counsel and try to explain all the bad things that can happen, but, of course, on the rare times that that does happen, we're dealing with lay defendants and not a defendant who happens to be a lawyer. So it seems to me not particularly appropriate to go into all the details that I normally go into, Mr. Davis, about the dangers of self-representation since you are a lawyer. . . . I believe that you have been . . . actively engaged in the practice of law in this state and in this circuit in excess of [20] years, maybe in excess of [30]. . . . I'm not sure when you got admitted [to the State Bar].
>
> MR. DAVIS: [19]69.
>
> THE COURT: Well, you have been practicing for a long time and have been actively engaged in the full-time practice of law. And that practice has included . . . a significant amount of criminal defense work. So you are experienced, and in my

---

[22] *United States v. Maldonado-Rivera*, 922 F2d 934, 977 (D) (1) (2d Cir. 1990); *United States v. Campbell*, 874 F2d 838, 845 (IV) (A) (1st Cir. 1989); *Neal v. Texas*, 870 F2d 312, 314-315 (1) (5th Cir. 1989); *State v. van Aelstyn*, 917 A2d 471, 474-477 (I) (Vt. 2007); *Butler v. State*, 767 So2d 534, 537 (II), 539 (III) (Fla. 4th Dist. Ct. App. 2000).

[23] (Citations and punctuation omitted.) *van Aelstyn*, supra at 476 (I) (B); *Butler*, supra at 539 (III).

opinion, having had you practice before me, . . . you are what I would term a competent attorney. Would you disagree with that?

MR. DAVIS: I won't disagree with that.

THE COURT: Okay. . . . [Y]ou have made the decision to represent yourself. . . . [Y]ou started out representing yourself. . . . At some point, you retained . . . Fanning. Then you are no longer represented by Mr. Fanning. I'm not sure of the circumstances of the terminating of that relationship, but I assume it was your choice.

MR. DAVIS: Yes, sir.

THE COURT: And it is your choice to represent yourself during this proceeding.

MR. DAVIS: Yes, sir.

THE COURT: Although I would note for the record that you have another member of the [B]ar seated with you here. . . . I believe he is a recent associate in your firm, Mr. Arrington.

MR. DAVIS: That's correct.

THE COURT: Michael Arrington.

MR. DAVIS: That's correct.

THE COURT: Who will be . . . assisting you during this case.

MR. DAVIS: That's correct, Your Honor.

The trial court's colloquy with Davis, as recited above, supports a finding that Davis voluntarily, knowingly, and intelligently waived his right to counsel. "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, *including the background, experience, and conduct of the accused.*"[24] The record reflects that Davis is a longstanding member of the Georgia Bar with experience in trying DUI cases. In fact, at trial, Davis testified that he advises all of his DUI clients to take a blood test. At the hearing on his motion for new trial, Davis, who again represented himself, admitted that he had tried and won DUI cases. Davis has never denied that he is an experienced, competent trial lawyer. "[C]ompetence in the law evidenced by licensure as an attorney and years of experience in criminal litigation, obviously carries with it an awareness of the dangers of self-representation."[25]

---

[24] (Citation and punctuation omitted; emphasis supplied.) *Clarke*, supra at 196; accord *Thomas v. State*, 244 Ga. 608, 611 (2) (261 SE2d 389) (1979); *Bollinger v. State*, 272 Ga. App. 688, 689 (1) (613 SE2d 209) (2005).

[25] (Citation, punctuation and footnote omitted.) *Neal*, supra at 315 (1).

In any event, there was no harm arising from the trial court's failure to advise Davis of the specific dangers and disadvantages inherent in representing himself, because Davis was assisted by a licensed member of the Bar sitting at counsel table. Thus, "[t]his is not a case where the defendant stood trial alone with no assistance or protection of his rights."[26] Although Davis argued at the new trial hearing that Arrington could not provide sufficient assistance because he had been admitted to the Bar only recently, Davis made no offer of proof in this regard. Thus, he cannot establish harm.[27] Accordingly, the trial court did not err in denying Davis's motion for new trial on the basis stated herein.

5. Davis additionally asserts that the trial court erred in forcing him to proceed to trial because he was unprepared. This claim of error fails, because the trial transcript reveals that Davis specifically stated for the record that he was "ready to go" and was not asking for a continuance. "The announcement of ready constitutes a waiver of [Davis's] right to a continuance."[28]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 13, 2009 —
RECONSIDERATION DENIED DECEMBER 9, 2009 — 

*Dock H. Davis*, pro se.
*Peter J. Skandalakis, District Attorney, Robert N. Peterkin, Assistant District Attorney*, for appellee.

---

[26] (Footnote omitted.) *Bollinger*, supra at 691-692 (1). Accord *Granville v. State*, 281 Ga. App. 465, 468 (2) (636 SE2d 173) (2006); *Davis v. State*, 257 Ga. App. 500, 502 (1) (571 SE2d 497) (2002).

[27] See *Bullard v. State*, 242 Ga. App. 843, 846 (3) (a) (530 SE2d 265) (2000) ("to determine whether the claimed error, if any, was harmful, there must be an offer of proof") (citation omitted).

[28] (Citations and punctuation omitted.) *Walton v. State*, 242 Ga. App. 639, 640 (1) (530 SE2d 531) (2000).